1   Ben F. Pierce Gore (SBN 128515)
2   PRATT & ASSOCIATES
    1871 The Alameda, Suite 425
3   San Jose, CA 95126
    Telephone:  (408) 369-0800
4   Fax:  (408) 369-0752
    pgore@prattattorneys.com

5

6   D'Juana Parks (pro hac vice)
    PROVOST ✯ UMPHREY LAW FIRM, LLP
7   490 Park Street
    Beaumont, TX 77701
8   Telephone: (409) 835-6000
    Fax: (409) 813-8647
9   dparks@pulf.com

10  Attorneys for Plaintiff

11

12              IN THE UNITED STATES DISTRICT COURT

13          FOR THE NORTHERN DISTRICT OF CALIFORNIA

14              SAN FRANCISCO DIVISION

15

16  ROBERT E. FIGY, individually and on      Case No. 3:13-CV-04828-TEH
17  behalf of all others similarly situated,
                                             **FIRST AMENDED CLASS ACTION AND**
18              Plaintiff,                    **REPRESENTATIVE ACTION COMPLAINT**
        vs.                                   **FOR EQUITABLE AND INJUNCTIVE**
19                                            **RELIEF**
    LIFEWAY FOODS INC.,
20                                           Action Filed:  October 17, 2013
                Defendant.
21

22          Plaintiff, through his undersigned attorneys, brings this lawsuit against Defendant Lifeway

23  Foods, Inc. ("Lifeway") as to his own acts, upon personal knowledge, and as to all other matters

24  upon information and belief.   In order to remedy the harm arising from Defendant's illegal

25  conduct which has resulted in unjust profits, Plaintiff brings this action on behalf of himself and

26  (1) a nationwide class of consumers and/or, in the alternative, (2) a statewide class of California

27  consumers both of whom, within the last four years, purchased any Lifeway's products: (1)

28

labeled with the ingredient "evaporated cane juice" referred to herein as "Misbranded Food Products").[1]

## DEFINITIONS

1.      "Class Period" is October 17, 2009 to the present.

1.      "Purchased Products" are those products that were purchased by Plaintiff during the Class Period.  Plaintiff BOB FIGY purchased Organic Lowfat Peach Kefir, Organic Lowfat Pomegranate/Acai Kefir, Organic Lowfat Raspberry Kefir, Nonfat Strawberry Kefir and Nonfat Raspberry Kefir.  Pictures of the Purchased Products are attached at Exhibits 1-5.

2.      "Substantially Similar Products" are the Purchased Products and Defendant's other products that bear the identical unlawful and illegal label statement as that found on the Purchased Products. LIFEWAY uses the unlawful labels containing the unlawful term "Evaporated Cane Juice" (sometimes "ECJ") for all the Class products as is more fully described below. ECJ is a term which is illegal to use to describe "sugar" or "dried cane sirup" on food labels under California law.

3.      "Misbranded Food Products" are the Purchased Products and the Substantially Similar Products identified herein.

4.      Upon information and belief, these Purchased Products and Substantially Similar Products are Lifeway's products that were sold during the class period and listed below in Table 1.  Plaintiff reserves the right to supplement this list if evidence is adduced during discovery to show that other Lifeway's products had labels which violate the same provisions of the Sherman Law and have the same label representations as the Purchased Products.  Table 1 below lists the Purchased Products and the Substantially Similar Products that are Misbranded:

LIFEWAY MISBRANDED PRODUCTS – TABLE 1

| LIFEWAY Products |
| --- |
| *Organic Lowfat Peach Kefir |
| *Organic Lowfat Pomegranate/Acai Kefir |
| *Organic Lowfat Raspberry Kefir |

---

[1] This case includes all of the "Purchased Products" and the "Substantially Similar Products" as defined herein.

| |
|---|
| *Lowfat Strawberry Kefir |
| *Nonfat Raspberry Kefir |
| Organic Lowfat Blueberry Kefir |
| Organic Lowfat Strawberries n' Cream Kefir |
| Organic Whole Milk Strawberries n' Cream Kefir |
| Organic Whole Milk Wildberries Kefir |
| Organic Green Kefir – Pomegranate Acai Blueberry |
| Green Kefir – Kiwi Passion Fruit |
| ProBugs – Goo-berry Pie Organic Kefir for Kids |
| ProBugs – Orange Creamy Crawler Organic Kefir for Kids |
| ProBugs – Sublime Slime Lime Organic Kefir for Kids |
| ProBugs – Strawnana Split Organic Kefir for Kids |
| Frozen Kefir – Tart and Tangy Original |
| Frozen Kefir – Tart and Tangy Mango |
| Frozen Kefir – Tart and Tangy Pomegranate |
| Frozen Kefir – Tart and Tangy Strawberry |
| Frozen Kefir – Tart and Tangy – Chocolate |
| Frozen Kefir – Tart and Tangy Duice de Leche |
| Frozen Kefir – Tart and Tangy Pumpkin |
| ProBugs – Frozen - GooBerry Pie |
| ProBugs – Frozen – Orange Creamy Crawler |
| ProBugs – Frozen – Strawnana Split |
| Lassi Mango |
| Lassi Strawberry |
| Lowfat Pomegranate Kefir |
| Lowfat Raspberry Kefir |
| Lowfat Peach Kefir |
| Lowfat Strawberry-Banana Kefir |
| Lowfat Blueberry Kefir |
| Lowfat Cherry Kefir |
| Lowfat Madagascar Vanilla Kefir |
| Lowfat Mango Kefir |
| Lowfat Cappuccino Kefir |
| Lowfat Chocolate Truffle Kefir |
| Lowfat Coconut Chia Kefir |
| Nonfat Blueberry Kefir |
| Nonfat Strawberry Kefir |
| Nonfat Strawberry-Banana Kefir |
| Nonfat Strawberry Greek Style Kefir |

| |
|---|
| Helios Organic Greek Nonfat Strawberry & Honey Kefir |
| Helios Organic Greek Nonfat Raspberry & Honey Kefir |
| Helios Organic Greek Nonfat Coconut & Honey Kefir |
| Helios Organic Greek Nonfat Vanilla Kefir |
| Helios Organic Nonfat Pomegranate/Blueberry & Honey Kefir |
| Helios Nutrition Organic Nonfat Kefir with Omega 3s – Passion Fruit |
| Helio Nutrition Organic Greek Nonfat Kefir - Strawberry & Honey |
| Helios Nutrition Organic Nonfat Kefir with Omega 3s – Pomegranate / Acai |
| Helios Nutrition Organic Greek Nonfat Pear & Honey Kefir. |
| Honey Swirl Greek Style Fro-Yo |
| Chocolate Swirl Greek Style Fro-Yo |
| Blood Orange Greek Style Fro-Yo |

*Purchased Products

The issue in this case is the label violations and/or misrepresentations on the labels of these products. The violations and/or misrepresentations pertain to the term "ECJ" (evaporated cane juice) included on these labels. Plaintiff asserts the use of the term "ECJ" is in violation of the following regulations and/or statutes:

21 CFR 101.30; 21 CFR 101.4(a)(1); 21 CFR 101.4(b)(20); 21 CFR 102.5; 21 CFR 131.200; 21 CFR 184.1854; 21 CFR 1.21; 21 CFR 120.1 (a); 21 CFR 168.130

Cal. Health & Safety Code
§110100; §110390; §110395; §110398; §110400; §110505; §110660; §110705; §110710; §110725; §110760; §110770; §110775; §110825

Cal. Food & Agriculture Code
§§36671; §§36672; §§36673; 21 USC 343

## SUMMARY OF THE CASE

5.     Plaintiff's case has two facets. The first is the "UCL unlawful" part. Plaintiff's first cause of action is brought pursuant to the unlawful prong of California's Unfair Competition Law, Cal. Bus. & Prof. Code § 17200 ("UCL"). *See,* First Cause of Action below. Plaintiff alleges that Defendant packages and labels the Purchased Products in violation of California's

Sherman Law which adopts, incorporates – and is identical – to the federal Food Drug & Cosmetic Act, 21 U.S.C. § 301 *et seq.* ("FDCA"). These violations render the Purchased Products and Substantially Similar Products "misbranded". Under California law, a food product that is misbranded cannot legally be manufactured, advertised, distributed, held or sold. Misbranded products cannot be legally sold, possessed, have no economic value, and are legally worthless. Indeed, the sale, purchase or possession of misbranded food is a criminal act in California and the FDA even threatens food companies with seizure of misbranded products. This "misbranding" – standing alone without any allegations of deception by Defendant other than the failure to disclose as per its duty, without the material fact that the product was illegal, or without review of or reliance on the labels by Plaintiff – gives rise to Plaintiff's first cause of action under the UCL unlawful prong and is a strict liability claim.

6. The second aspect to this case is the "deceptive" part. Plaintiff alleges that the labels on the Purchased Products and the Substantially Similar Products – aside from being unlawful under the Sherman Law – are also misleading, deceptive, unfair and fraudulent. Plaintiff describes these labels and the ways in which they are misleading. Plaintiff alleges that he reviewed the labels on the respective Purchased Products that he purchased, reasonably relied in substantial part on the labels, and was thereby deceived, in deciding to purchase these products. Moreover, the very fact that Defendant sold such illegal Purchased Products and Substantially Similar Products and did not disclose this fact to consumers is a deceptive act in and of itself. Plaintiff would not have purchased a product that is illegal to own or possess. Had Defendant informed Plaintiff of this fact, there would have been no purchases. Plaintiff relied upon the Defendant's implied representation that Defendant's products were legal that arose from Defendant's material omission of the facts that its products were in fact, actually illegal.

7. Plaintiff did not know, and had no reason to know, that Defendant's products were misbranded under the Sherman Law and that the products bore food labeling claims, despite failing to meet the requirements to make those food labeling claims. Similarly, Plaintiff did not know, and had no reason to know, that Defendant's products were false and misleading.

8. Identical California and federal laws require truthful, accurate information on the

1  labels of packaged foods. The law is clear: misbranded food cannot legally be sold, possessed,

2  has no economic value and is legally worthless. Purchasers of misbranded food are entitled to a

3  refund of their purchase price.

4        9.     Identical California and federal laws regulate the content of labels on packaged

5  food.  The FDCA of requirements were adopted by the California Sherman Law.  Under both the

6  Sherman Law and FDCA section 403(a), food is "misbranded" if "its labeling is false or

7  misleading in any particular," or if it does not contain certain information on its label or its

8  labeling.  21 U.S.C. § 343(a).

9        10.    Under the FDCA, the term "false" has its usual meaning of "untruthful," while the

10  term "misleading" is a term of art.  Misbranding reaches not only false claims, but also those

11  claims that might be technically true, but still misleading.   If any one representation in the

12  labeling is misleading, the entire food is misbranded, and no other statement in the labeling cure a

13  misleading statement.

14        11.    Under California law, a food product that is "misbranded" cannot legally be

15  manufactured, advertised, distributed, held or sold.  Misbranded products cannot be legally sold,

16  possessed, have no economic value, and are legally worthless.  Plaintiff and members of the Class

17  who purchased these products paid an unwarranted premium for these products.

18        12.    Lifeway's website, www.kefir.com is incorporated into the label for each of

19  Defendant's respective products. The Purchased Products and the Substantially Similar Products

20  contain the website address. According to the FDA, and as a matter of law, the Lifeway website

21  constitutes the labeling of any product bearing these web addresses.

22        13.    If a manufacturer, like Lifeway, is going to make a claim on a food label, the label

23  must meet certain legal requirements that help consumers make informed choices and ensure that

24  they are not misled and that label claims are truthful, accurate, and backed by scientific evidence.

25  As described more fully below, Defendant has sold products that are misbranded and are

26  worthless because (i) the labels violate the Sherman Law and, separately, (ii) Defendant made,

27  and continues to make, false, misleading and deceptive claims on its labels.

28        14.    Plaintiff brings this action under California law, which is identical to federal law,

because of Defendant's food labeling practices which are both (i) unlawful and (ii) deceptive and misleading to consumer because they make unlawful and misleading "evaporated cane juice" claims;

## BACKGROUND

15.     LIFEWAY products, with their distinctive packaging and array of various food products, are available at most major supermarket chains from coast to coast.  Lifeway knows that many of its consumers wish to eat, and/or to provide to their families, a diet comprised of natural foods and foods that lack added sugar.  Lifeway recognizes that natural and health claims drive sales, and actively promotes the naturalness and health benefits of its products.  LIFEWAY claims that "We're here to improve the health of our customers."  In addition, Lifeway markets Kefir products specifically for children – the "ProBugs" line for younger children and "ProBugs Blast" line for older children and claims "It's nutritious, naturally" without mentioning the added sugar. While declaring their products improve health, LIFEWAY has unlawfully utilized the illegal term "Evaporated Cane Juice" and/or "Organic Cane Juice" on its packaging and hidden from its consumers the fact that "sugar" is in many of its products.

16.     LIFEWAY uses the term "Evaporated Cane Juice" to make its products appear healthier than products that contain "sugar" as an ingredient.  This illegal label is used to increase sales and to charge a premium by making a product seem healthier than it is in reality.

Plaintiff BOB FIGY purchased the following LIFEWAY products:

1.  Organic Lowfat Peach Kefir
2.  Organic Lowfat Pomegranate/Acai Kefir
3.  Organic Lowfat Raspberry Kefir
4.  Nonfat Strawberry Kefir
5.  Nonfat Raspberry Kefir

17.     Prior to purchasing these products, Plaintiff read the labels on these products and saw that the labels included the term "Evaporated Cane Juice" as one of the "INGREDIENTS." Plaintiff desired to purchase healthy food products, free of added or excessive sugar in the low fat Kefir cultured milk smoothies he purchased.  The ingredients on the labels of the LIFEWAY's products Plaintiff purchased appear to be healthy ingredients, including such verbage as "cultured organic lowfat milk" and "organic .... juice concentrate."    Plaintiff, as any health-conscious

consumer would likely agree, believed the products he purchased were products that were made with natural and organic ingredients. Plaintiff did not realize that these products contained added sugar from the deceptive verbage "evaporated cane juice," a term Plaintiff reviewed when reading the label. Plaintiff read and relied upon this misleading and deceptive language, "Evaporated Cane Juice," when making his decision to purchase the Kefir cultured milk smoothies he purchased. If not for this misrepresentation, Plaintiff BOB FIGY would not have purchased these products. Plaintiff therefore suffered injury as he lost money buying LIFEWAY's deceptively labeled smoothies when he could have chosen to purchase alternative products that did not contain sugar or to refrain from buying the products at all. Plaintiff specifically relied on the products' ingredient labeling when he made his decision to purchase the products listed above and attached hereto as Exhibits 1 – 5. These products were mislabeled food products and, as a result, Plaintiff suffered injury. Plaintiff further viewed and relied upon various representations and information provided in LIFEWAY's website: www.kefir.com, which claims that LIFEWAY Kefir is "loaded with nutritious ingredients" and yet deceives and misleads consumers with its labels.

18.     Exemplar labels of the products purchased by Plaintiff BOB FIGY are provided in Exhibits 1-5. These exhibits are true, correct and accurate photographs of LIFEWAY's ECJ package labels.

19.     At all times during the Class Period, the above listed LIFEWAY products listed "Evaporated Cane Juice" as an ingredient.

20.     The ingredient LIFEWAY lists as "Evaporated Cane Juice" is not derived from a fruit or vegetable.

21.     The ingredient LIFEWAY calls "Evaporated Cane Juice" is "sugar" or "dried cane sirup."[2]

22.     If a manufacturer makes a claim on a food label, the label must meet certain legal requirements that help consumers make informed choices and ensure that they are not misled. As described more fully below, Defendant has made, and continues to make, unlawful as well as false and deceptive claims in violation of federal and California laws that govern the types of

representations that can be made on food labels.  These laws recognize that reasonable consumers are likely to choose products claiming to have a health or nutritional benefit over otherwise similar food products that do not claim such properties or benefits or that discloses certain ingredients.  More importantly, these laws recognize that the failure to disclose the presence of risk-increasing nutrients is deceptive because it conveys to consumers the net impression that a food makes only positive contributions to a diet, or does not contain any nutrients at levels that raise the risk of diet-related diseases or health-related conditions.

23.     Defendant has made, and continues to make, false and deceptive claims on its Misbranded Food Products in violation of federal and California laws.  In particular, Defendant has violated federal and California labeling regulations by listing sugar and/or sugar cane syrups as "evaporated cane juice."  According to the FDA, the term "evaporated cane juice" is not the common or usual name of any type of sweetener, including sugar or dried cane syrup because sugar has a standard of identity defined by regulation in 21 C.F.R. § 101.4b (20); 21 CFR 184.1854.  The common or usual name for this ingredient is "sugar".  According to the FDA, sweeteners derived from sugar cane or sugar cane syrup should not be listed in the ingredient declaration by names that suggest that the ingredients are juice, such as "evaporated cane juice."  The FDA considers such representations to be "false and misleading" under section 403(a)(1) of the FDCA (21 U.S.C. 343(a)(1)) because they fail to reveal the basic nature of the food and its characterizing properties (i.e., that the ingredients are sugars or syrups) as required by 21 C.F.R. § 102.5.

24.     Defendant's violations of law include the illegal advertising, marketing, distribution, delivery and sale of Defendant's Misbranded Food Products to consumers in California and throughout the United States.

25.     Consumers have paid a premium price for Misbranded Food Products that they have been misled into believing do not contain added sugars or syrups.

**PARTIES**

26.     Plaintiff Figy is a resident of San Francisco, California who purchased various Lifeway's Misbranded Food Products during the four (4) years prior to the filing of this Complaint (the "Class Period").

27.     Lifeway, Foods Inc. is an Illinois corporation doing business in the State of California and throughout the United States of America.  Lifeway Foods, Inc. has previously been served with process.

28.     Defendant is a leading producer of retail probiotic diary beverages and products similar to yogurt, including the Misbranded Food Products.  Defendant sells its food products to consumers through grocery and other retail stores throughout California and the United States.

**JURISDICTION AND VENUE**

29.     This Court has original jurisdiction over this action under 28 U.S.C. § 1332(d) because this is a class action in which: (1) there are over 100 members in the proposed class; (2) members of the proposed class have a different citizenship from Defendant; and (3) the claims of the proposed class members exceed $5,000,000 in the aggregate.

30.     The Court has jurisdiction over the federal claim alleged herein pursuant to 28 U.S.C. § 1331, because it arises under the laws of the United States.

31.     The Court has jurisdiction over the California claims alleged herein pursuant to 28 U.S.C. § 1367, because they form part of the same case or controversy under Article III of the United States Constitution.

32.     Alternatively, the Court has jurisdiction over all claims alleged herein pursuant to 28 U.S.C. § 1332, because the matter in controversy exceeds the sum or value of $75,000, and is between citizens of different states.

33.     The Court has personal jurisdiction over Defendant because a substantial portion of the wrongdoing alleged in this Amended Complaint occurred in California.  Defendant, a California corporation, is authorized to do business in California, has sufficient minimum contacts with California, and otherwise intentionally avails itself of the markets in California and the United States through the promotion, marketing and sale of merchandise, sufficient to render

1    the exercise of jurisdiction by this Court permissible under traditional notions of fair play and

2    substantial justice.

3        34.    Because a substantial part of the events or omissions giving rise to these claims

4    occurred in this District and because this Court has personal jurisdiction over Defendant, venue is

5    proper in this Court pursuant to 28 U.S.C. § 1391(a) and (b).

6                              **FACTUAL ALLEGATIONS**

7        **A.    Identical California And Federal Laws Regulate Food Labeling**

8        35.    Food manufacturers are required to comply with identical federal and state laws

9    and regulations that govern the labeling of food products.  First and foremost among these is the

10   FDCA and its labeling regulations, including those set forth in 21 C.F.R. § 101 *et seq*.

11       36.    Pursuant to the Sherman Law, California has expressly adopted the federal

12   labeling requirements as its own and indicated that "[a]ll food labeling regulations and any

13   amendments to those regulations adopted pursuant to the federal act, in effect on January 1, 1993,

14   or adopted on or after that date shall be the food regulations of this state."  California Health &

15   Safety Code § 110100.

16       37.    In addition to its blanket adoption of federal labeling requirements, California has

17   also enacted a number of laws and regulations that adopt and incorporate specific enumerated

18   federal food laws and regulations.  For example, a food product is misbranded under California

19   Health & Safety Code §110660 if its labeling is false and misleading in one or more particulars.

20   Further, it is misbranded under Cal.  Health & Safety Code §110725 if it fails to use the common

21   and usual name to identify an ingredient in the product.

22       **B.    Defendant's Use of "Evaporated Cane Juice" As An Ingredient on Its Labels**
         **is Unlawful**
23

24       38.    All of Lifeway's products at issue have unlawfully utilized the illegal term ECJ in

     the ingredient list on their labels.
25

26       39.    Lifeway unlawfully uses the illegal term "Evaporated Cane Juice" on its package

     labels, instead of the proper term "sugar".[2]
27

28   ─────────────────────
     [2] Plaintiff alleges that the ingredient called "evaporated cane juice" by Defendant was in fact
     sugar. It is possible, however, that instead of adding crystallized sugar as the ingredient at issue

40.     Lifeway uses the term "ECJ" to make its products appear healthier than a product that contains "added sugar" as an ingredient.  This illegal label term is used to increase sales and to charge a premium by making a product seem healthier than it is in reality by making it appear that no sugar has been added as an ingredient to Lifeway's food products.

41.     Each of the "purchased products" and "substantially similar products" at issue in this case are misbranded in the same way in that they list "evaporated cane juice" in the ingredient list and omit the term "sugar" or "syrup" as an added ingredient.

42.     Exemplar labels are provided in Exhibits 1-5.  These exhibits are true, correct and accurate photographs of Lifeway's ingredient labels of some of the Purchased Products and representative of the labels on the Substantially Similar Products in their use of ECJ. In addition to the products for which labels are provided, Lifeway has listed "ECJ" as an ingredient in each and every one of its food products listed in Table 1.

43.     Lifeway's product labeling fails to accurately identify sugar as an "added ingredient" of its food products. Rather, the label identifies "Evaporated Cane Juice" as an ingredient, despite the fact that the FDCA requires that the ingredient be called "sugar" or "dried cane syrup." The ingredient is not "juice," but is "sugar" or "syrup." 21 C.F.R. § 101.4 (a)(1) provides "[i]ngredients required to be declared on the label or labeling of a food…shall be listed by common or usual name… ." The common or usual name for an ingredient is the name established by common usage or by regulation." 21 C.F.R. § 102.5.  These federal regulations have been adopted by California pursuant to the Sherman Law.  As discussed below, ECJ is not the common or usual name of any sweetener as established by common usage or by regulation.

44.     Consistent with the common and usual name regulations, the FDA has specifically warned companies not to use the term "Evaporated Cane Juice."   The FDA has issued these

---

that the Defendant added dried sugar cane syrup as the ingredient at issue. The common and usual name of such a syrup is "dried cane syrup" as detailed in 21 C.F.R. § 168.130. Regardless of whether the ingredient in question was sugar or dried cane syrup, calling the ingredient ECJ is unlawful and violates the same state and federal statutory and regulatory provisions and is contrary to FDA policy and guidance. Moreover, the use of the term ECJ renders the products misbranded and illegal to sell or possess regardless of whether the ECJ refers to sugar or sugar cane syrup. While Plaintiff alleges that the ingredient in question was in fact sugar, the Plaintiff's allegations that ingredient listed as ECJ was sugar should be read to mean the ingredient listed as ECJ was sugar or, in the alternative, dried cane syrup.

warnings because a label containing the term ECJ (1) is "false and misleading"; and (2) it is a violation of a number of labeling regulations designed to ensure that manufacturers label their products with the common and usual names of the ingredients they use and accurately describe the ingredients they utilize; and (3) the ingredient in question is not a juice.

45.     According to the FDA's published policy, "evaporated cane juice" is simply a "false and misleading" way of describing sugar, and therefore, it is improper to disguise sugar in a product as a type of "juice."

46.     In October of 2009, the FDA issued *Guidance for Industry: Ingredients Declared as Evaporated Cane Juice*, *Draft Guidance*, ("2009 ECJ Guidance") (*emphasis* added) which advised industry that:

> [T]he term "evaporated cane juice" has started to appear as an ingredient on food labels, most commonly to declare the presence of sweeteners derived from sugar cane syrup. However, FDA's current policy is that sweeteners derived from sugar cane syrup should not be declared as  "evaporated cane juice" because that term falsely suggests that the sweeteners are juice…

> "Juice" is defined by 21 CFR 120.1(a) as "the aqueous liquid expressed or extracted from one or more fruits or vegetables, purees of the edible portions of one or more fruits or vegetables, or any concentrates of such liquid or puree."…

> As provided in 21 CFR 101.4(a)(1), "Ingredients required to be declared on the label or labeling of a food… shall be listed by common or usual name…"  The common or usual name for an ingredient is the name established by common usage or by regulation (21 CFR 102.5(d)). The common or usual name must accurately describe the basic nature of the food or its characterizing properties or ingredients, and may not be "confusingly similar to the name of any other food that is not reasonably encompassed within the same name" (21 CFR 102.5(a))…

> Sugar cane products with common or usual names defined by regulation are sugar (21 CFR 101.4(b)(20)) and cane sirup (alternatively spelled "syrup") (21 CFR 168.130). Other sugar cane products have common or usual names established by common usage (e.g., molasses, raw sugar, brown sugar, turbinado sugar, muscovado sugar, and demerara sugar)…

> The intent of this draft guidance is to advise the regulated industry of FDA's view that the term "evaporated cane juice" is not the common or usual name of any type of sweetener, including dried can syrup. Because cane syrup has a standard of identity defined by regulation in 21 CFR 168.130, the common or usual name for the solid or dried form of cane syrup is "dried cane syrup."…

> Sweeteners derived from sugar cane syrup should not be listed in the ingredient declaration by names which suggest that the ingredients are juice, such as "evaporated cane juice." **FDA considers such representations to be false and misleading** under section 403(a)(1) of the Act (21 U.S.C. 343(a)(1)) because they fail to reveal the basic nature of the food and its characterizing properties (i.e., that

the ingredients are sugars or syrups) as required by 21CFR 102.5.  Furthermore, sweeteners derived from sugar cane syrup are not juice and should not be included in the percentage juice declaration on the labels of beverages that are represented to contain fruit or vegetable juice (see 21 CFR 101.30). (emphasis added).

http://www.fda.gov/Food/GuidanceComplianceRegulatoryInformation/GuidanceDocuments/FoodLabelingNutrition/ucm181491.html.

47.     The FDA's position is clear: labels listing "evaporated cane juice" are "false and misleading." ECJ is an unlawful term because it is not the common or usual name for sugar. The ingredient listed as "evaporated cane juice" on Defendant's labels is really "sucrose" as defined in 21 C.F.R. § 184.1854 which is required to be listed as "sugar". While FDA regulations generally provide that "[t]he name of an ingredient shall be a specific name and not a collective (generic) name," the regulations expressly provide that "[f]or purposes of ingredient labeling, the term *sugar* shall refer to sucrose, which is obtained from sugar cane or sugar beets in accordance with the provisions of 184.1854 of this chapter." 21 C.F.R. § 101.4(b)(20)(emphasis in original). 21 C.F.R. § 184.1854 lists the chemical names and identifies "sucrose", CAS number and structure of sugar/sucrose ($C_{12}$ $H_{22}$ $O_{11}$, CAS Reg. No. 57-50-11-1, β-D-fructofuranosyl-α-D-glucopyranoside) as well as its common names (sugar, sucrose, cane sugar, or beet sugar). 21 C.F.R. § 184.1854 also confirms that the definition of sugar/sucrose covers and includes products "obtained by crystallization from sugar cane or sugar beet juice that has been extracted by pressing or diffusion, then clarified and evaporated." The ingredient identified as ECJ meets this definition and is sucrose.  As such, Defendant cannot call its sweetener ingredient "evaporated cane juice," but must call it "sugar" or alternatively, "dried cane syrup" pursuant to FDA regulations.

48.     It is well established FDA policy that ingredients must always be declared by their common and usual names.  In its October 2009 *Guidance for Industry: A Food Labeling Guide (6. Ingredient Lists)*, the FDA advises:

Should the common or usual name always be used for ingredients?

**Answer:** Always list the common or usual name for ingredients unless there is a regulation that provides for a different term. For instance, use the term "sugar" instead of the scientific name "sucrose."

"INGREDIENTS: Apples, Sugar, Water, and Spices"

See also section 4 question 3. 21 CFR 101.4(a)

http://www.fda.gov/Food/GuidanceRegulation/GuidanceDocumentsRegulatoryInformation/LabelingNutrition/ucm064880.htm#common.

49.     Defendant could easily have complied with the FDA and Sherman Law labeling regulations by simply following the FDA's clear example and listing "sugar" on the ingredient list instead of resorting to the illegal term "evaporated cane juice."

50.     When the food industry first approached the FDA in 1999 with the idea of calling sugar "evaporated cane juice," the FDA responded with a guidance letter ("2000 Guidance Letter"), saying that certain sweeteners have "well recognized common or usual name[s]" and the common or usual name of "[t]he product extracted from sugar cane is either 'sugar' [21CFR § 101.4(b)(20) and 184.1854], or 'cane sirup' [21 CFR § 168.130]."  The 2000 Guidance Letter went on to point out to the industry that sweeteners such as the sugar at issue here:

> should not be declared in the ingredient declaration by names which suggest that the ingredients are juice, e.g "evaporated _ juice" or "_nectar", or in such a way as to suggest that the ingredients contain no sugar, e.g. "natural extract of _". Such representations are false and misleading and fail to reveal the basic nature of the food and its characterizing properties, i.e. the ingredients are sugar or syrups. They are not juice and we should also point out that it is false and misleading to include any of these sweeteners in the fruit juice percentage declaration on the label. As you know, many of FDA's criminal prosecutions of manufacturers and seizures of fruit juices for economic adulteration have involved precisely these sweeteners being misrepresented in such a way as to mislead consumers.

> We are concerned about the potential of these ingredients to be labeled in such a way as to mislead consumers. We trust that the foregoing will be helpful in providing guidance on the appropriate labeling of these ingredients.

51.     Since it issued the 2000 Guidance Letter, the FDA has sent out numerous warning letters to food manufacturers putting the food industry on notice that ECJ is not the common or usual name of any sweetener, and that its use on food labels is unlawful. Pursuant to FDA policy, warning letters are issued for violations of regulations that the FDA considers to be "violations of regulatory significance".  The FDA warning letters, some of which were issued before 2009 and others after the 2009 ECJ Guidance, have all expressly stated that "evaporated cane juice" is not the common or usual name of any type of sweetener and that it is not "juice".  The FDA has stated that the proper way to declare this ingredient can be found on the FDA website in the 2009 ECJ Guidance.

52.     The FDA has not wavered from its position that "evaporated cane juice" is a false and misleading term that violates numerous labeling regulations and misbrands products since it was first set out in 2000. Despite the FDA's numerous policy statements, warning letters and guidance, including the issuance of the 2009 ECJ Guidance which merely reiterates a position the FDA has taken for at least a full decade, Lifeway failed to remove the unlawful term "ECJ" from their misbranded food products' ingredient lists. Lifeway continued to use the unlawful term ECJ despite being aware of the unsuccessful efforts of the its organic food trade association to have the FDA withdraw the ECJ guidance, including a December 4, 2009 letter submitted to the FDA by the trade association.

53.     Plaintiff and the Class paid a premium price for Lifeway's products with the illegal term "ECJ" listed on their labels. Plaintiff would not have purchased these products had he known the products (1) contained sugar as an added ingredient, and (2) were illegal to sell and possess nor would he have expended the purchase price for products that were worthless due to their illegality.

54.     Plaintiff and the Class have been damaged by Lifeway's illegal conduct in that they purchased misbranded and worthless products that were illegal to sell or possess.

55.     Plaintiff's unlawful ECJ claims are brought pursuant to the unlawful prong of California's Unfair Competition Law, Cal. Bus. & Prof. Code § 17200 and the Consumers Legal Remedies Act, Cal. Civ. Code §1750, *et seq.*  Plaintiff alleges that Defendant packaged and labeled the Purchased Products and Substantially Similar Products in violation of California's Sherman Law which adopts, incorporates, and is, in all relevant aspects, identical to the federal Food Drug & Cosmetics Act, 21 U.S.C. § 301 *et. seq.* ("FDCA").  Purchased Products and Class Products with this identical type of ECJ labeling violations are "misbranded."

56.     21 C.F.R. §§ 101.3, 101.4 and 102.5, which have been adopted by California, prohibit manufacturers from referring to foods by anything other than their common and usual names.[3]

---

[3] Pursuant to 21 C.F.R. §102.5 the common or usual name must accurately describe the basic nature of the food or its characterizing properties or ingredients, and may not be "confusingly similar to the name of any other food that is not reasonably encompassed within the same name"

57.     21 C.F.R. § 101.4, which has been adopted by California, prohibits manufacturers from referring to ingredients by anything other than their common and usual names. It specifically specifies in subsection (b)(20) that "[f]or purposes of ingredient labeling, the term sugar shall refer to sucrose, which is obtained from sugar cane or sugar beets in accordance with the provisions of 184.1854 of this chapter." 21 C.F.R. § 101.4(b)(20). 21 C.F.R. § 184.1854 lists the chemical names, CAS number and structure of sugar/sucrose (C12 H22 O11, CAS Reg. No. 57-50-11-1, β-D-fructofuranosyl-α-D-glucopyranoside) as well as its common names (sugar, sucrose, cane sugar, or beet sugar). 21 C.F.R. § 184.1854 also confirms that the definition of sugar/sucrose covers products "obtained by crystallization from sugar cane or sugar beet juice that has been extracted by pressing or diffusion, then clarified and evaporated."

58.     The Federal Register makes clear that the definition of sugar/sucrose in 21 C.F.R. § 184.1854 was specifically modified by the FDA to cover sugar/sucrose that was obtained by the evaporation of sugar cane juice stating:

> In addition, the agency notes that the description of sucrose in proposed § 184.1854(a) does not explicitly cover the extraction, by pressing, of sugar cane juice from sugar cane or beet juice from sugar beets and also does not mention the evaporation of the extracted sugar cane juice or beet juice. Therefore, the agency has modified § 184.1854(a) to include "pressing" as a possible extraction procedure and "evaporated" as a step in the refinement of sucrose.

53 F.R. 44862.

59.     Lifeway has violated the regulatory provisions detailed above by failing to use the common or usual name for sugar as mandated by law. In particular, Lifeway used the unlawful term "ECJ" on its products in violation of numerous federal and state labeling regulations designed to protect consumers from illegal misbranded products in direct violation of express FDA policy as quoted above.

60.     Defendant Lifeway violated 21 C.F.R. §§ 101.4 and 102.5 (adopted and

(21 C.F.R. 102.5(a)). Defendant's use of the term ECJ fails this requirement because that term does not accurately describe the basic nature of the food or its characterizing properties or ingredients, and may not be "confusingly similar to the name of any other food that is not reasonably encompassed within the same name. Here the true nature of the ingredient is a type of added sugar added to sweeten food. The characterizing properties of this ingredient were falsely misrepresented as a juice when in fact they were a sugar or syrup. Defendant hid this fact by unlawfully using a confusing name (a type of juice) that is not reasonably encompassed within the same name.

incorporated by reference by Sherman Law § 110100 and Sherman Law § 110725). Sherman Law § 110725 mandates that a product is misbranded if the common and usual ingredient names are not used. Therefore, Lifeway violated the UCL's unlawful prong by misbranding its products with ECJ instead of using the term "sugar"; or the alternative term "dried cane syrup."

61.     Lifeway's act of selling an illegally misbranded product violates Sherman Law § 110760 which makes it unlawful for any person to manufacture, sell, deliver, hold, or offer for sale any food that is misbranded. The sale of a misbranded product results in an independent violation of the unlawful prong of the UCL that is separate from any labeling violation.

62.     Pursuant to Sherman Law § 110825, the sale of such a misbranded product (*i.e.* one whose label fails to use the common and usual ingredient name as required by law) constitutes a criminal act punishable by up to twelve month in jail.  As a result, the injury to the Class arises from the Defendant illegally selling a product it misbranded, the sale of which is a criminal act. Plaintiff and the Class have been unlawfully deprived of money in an illegal transaction that occurred because the Defendant sold them a worthless, illegal product that could not be legally sold or possessed. Due to the law's prohibition of possession of such a product, consumers have been unwittingly placed, solely and directly by Lifeway's conduct, in a legal position that no reasonable consumer would choose. Consumers have thus been directly injured by the Defendant's illegal act of unlawfully selling them an illegal product. This harm goes beyond mere economic injury.

63.     Numerous FDA warning letters, which are issued only for violations of regulatory significance, have made it clear that the use of the term "evaporated cane juice" is unlawful because the term does not represent the common or usual name of a food or ingredient. These warning letters state that foods that bear labels that contain the term "evaporated cane juice" are misbranded. Such unlawful conduct by Defendant Lifeway is actionable under California law irrespective of any reliance by consumers such as Plaintiff.

64.     Under California law, a food product that is misbranded cannot be legally manufactured, advertised, distributed, possessed or sold. Because these products are illegal to possess, they have no economic value and are legally worthless. Indeed, the sale or possession of

misbranded food is a criminal act in California. The sale of misbranded products is illegal under federal law as well, as previously stated, and can result in the seizure of the misbranded products and imprisonment of those involved. When Plaintiff and the Class purchased an illegally misbranded product (such as the Purchased Products and Substantially Similar Products), there is causation and injury even absent reliance on the ECJ misrepresentation that misbranded the product.

65.    Pursuant to California Civ. Code § 3523 it is a codified legal maxim that "for every wrong there is a remedy." The unlawful sale of misbranded food products that are illegal to sell or possess as a matter of express statutory law pursuant to Sherman Law § 110760 – standing alone without any allegations of deception by Defendant other than the implicit misrepresentation that its products are legal to sell or possess, or any review of or reliance on the particular labeling claims by Plaintiff – gives rise to Plaintiff's right to recover for the damages suffered as a result of the illegal sale. Such illegal sales constitute illegal contracts and as such are void and entitle Plaintiff and the Class to damages and restitution under the common law and numerous statutory provisions enacted by California including but not limited to California Civ. Code §§ 1427, 1428, 1549, 1619, 1621, 1667, 1668, 1712, 3281-82, 3294, 3300, 3333, 3345, 3360, 3366-68, 3523, and 3539. In short, Defendant's injury causing unlawful conduct is the only necessary element needed for liability. All Plaintiff needs to show is that he bought an unlawful product that he would not have otherwise purchased absent the Defendant's failure to disclose the material fact that the product was unlawful to sell or possess. Therefore, this claim does not sound in fraud; instead, it alleges strict liability pursuant to the above cited provisions of the federal law and Sherman Law and California's common law and laws relating to illegal contracts and transactions.  However, Plaintiff did in fact rely upon the misrepresentations on the labels.

66.    The Plaintiff was injured by the loss of the purchase price in an illegal transaction, the illegality of which Plaintiff was unaware, and which the Defendant had a duty to disclose. Defendant misled Plaintiff to believe that the Lifeway's products were legal to purchase and possess.  Had Plaintiff known that the Lifeway's products were misbranded, he would not have bought Defendant's products.    Plaintiff relied on the Defendant's explicit ECJ representations.

As a result of such reliance, Plaintiff thought that Lifeway's products was preferable to other similar products lacking such statements.  Plaintiff further relied upon the Defendant's implicit representation based on Defendant's material omission of material facts that these Lifeway products were legal to sell and possess.  Reasonable consumers would be, and were, misled in the same manner as Plaintiff.  Defendant had a duty to disclose the illegality of their misbranded products because (a) they had exclusive knowledge of material facts not known or reasonably accessible to the Plaintiff; and (b) the Defendant actively concealed such material facts from the Plaintiff.  The Defendant had a duty to disclose the information required by the labeling laws discussed herein because of the disclosure requirements contained in those laws.  In addition, Plaintiff was injured because he was unwittingly placed in legal jeopardy due to the possession of Defendant's illegal and misbranded products.  No reasonable consumer would buy a product that was illegal to sell or possess.

67.   Defendant's practices violated a number of laws as set forth in section No. 5 above which render the Purchased Products and Substantially Similar products misbranded.

68.   Defendant's act of selling a misbranded product violates Sherman Law **§** 110760 (unlawful for any person to manufacture, sell, deliver, hold, or offer for sale any food that is misbranded). The sale of a misbranded product results in an independent violation of the unlawful prong that is separate from the labeling violations listed above. When Plaintiff purchased Defendant's misbranded products, there was causation and injury even absent reliance on the misrepresentation/omission that misbranded the product. This injury arises from the unlawful sale of an illegal product that is crime to sell and crime to possess. Plaintiff was deprived of money n an illegal sale and given a worthless illegal product in return. In addition, due to the law's prohibition of possession of such a product, consumers have been unwittingly placed by the Defendant's conduct in a legal position that no reasonable consumer would agree to be placed.

69.   Thus, in this case, where Defendant unlawfully sold products containing the unlawful term "ECJ" there is 1) a violation of specific labeling regulations and 2) an independent violation of the unlawful prong due to the Defendant's sale of an illegal product that is unlawful to possess.  Plaintiff would not have bought the misbranded food products had he known or had

Defendant disclosed the material fact that the misbranded food products were illegal to sell and possess. The Plaintiff was injured by the Defendant's unlawful act of selling him an illegal product that was illegal to sell or possess.

### C.     Defendant's Use of "Evaporated Cane Juice" as an Ingredient on Its Labels is Fraudulent, Deceptive and "Misleading" Because It Fails to Identify "Added Sugar"

70.     The Plaintiff is a health conscious consumer who wishes to avoid "added sugars" in the food products he purchases. "Added sugar" is a recognized term that has a distinct meaning as described below. The Plaintiff was unaware that the Lifeway products he was purchasing contained "added sugars" that were *added* as an ingredient into Defendant's food products during processing or preparation. While Plaintiff was aware that the Lifeway food products contained some sugars, he believed these sugars were naturally occurring sugars that were found *naturally* in the ingredients used by Lifeway.  The Plaintiff was unaware that the Lifeway products he purchased contained "added sugar". The reason that Plaintiff was unaware of this fact was that Lifeway utilized the false and misleading term "evaporated cane juice" to identify the *added sugar* it added as an ingredient to its food product. The FDA deems the term "evaporated cane juice" to be "false and misleading" because 1) it "fail[s] to reveal the basic nature of the food and its characterizing properties (*i.e.*, that the ingredients are sugars or syrups)" and 2) "sweeteners derived from sugar cane syrup are not juice."

71.     Plaintiff, who scanned the ingredient lists of the Lifeway's products for forms of added sugar, failed to recognize the term "evaporated cane juice" as a form of added sugar. This is hardly surprising since 1) the FDA considers the term to be false and misleading *because* it fails to reveal that the ingredient is a sugar or a syrup; 2) juice is considered to be a healthy food that does not contain added sugars, 3) most lists of added sugars and sugar aliases do not list evaporated cane juice as an added sugar or sugar alias; and 4) consumer studies confirm that most purchase decisions are made in a fraction of a second and thus the potential for a false and misleading term to mislead is significant. Moreover, as discussed below, the Nutrition Facts listing of total sugars does not allow a consumer to determine if a product has any added sugars.

Consumers are only able to determine the presence of added sugars by reading a products' ingredient list.  Companies like Lifeway that mislabel their sugars in the ingredient list with false and misleading terms frustrate this capability by hiding the added sugar. In addition, the inclusion of words such as "juice" or "cane" into the false and misleading term "evaporated cane juice" do not mitigate the false and misleading nature of the term and in fact, in the case of a word like "juice," actually makes it misleading in the eyes of the FDA since it is an added sugar and not a juice. In contrast, the failure to utilize words like "sugar" or "syrup" to describe the ingredient identified by Lifeway as evaporated cane juice is false and misleading because it conceals the fact that the ingredient is in fact an added sugar, namely an added sugar or syrup sweetener.

72.     The Plaintiff's desire to avoid added sugars was reasonable. Added sugar is a known health risk that consumers are advised to avoid by the United States government, scientific and educational institutions, and food-related companies such as grocery store chains and food manufacturers. All of these entities know and publish: 1) there is a distinction between added sugars and naturally occurring sugars; 2) added sugars have no beneficial nutritional value, contribute only empty calories and have recognized health risks 3) consumers should either eliminate or greatly limit their consumption of added sugars and foods containing added sugars; 4) it is the ingredient list and not the nutrition facts panel of a food's label that informs consumers of the presence of added sugars; and 5) consumers need to be careful to avoid added sugar that is disguised by another name.

73.     The 2010 Dietary Guidelines promulgated by U.S. Department of Health and Human Services and the U.S. Department of Agriculture make clear that 1) there is a distinction between "added sugars" and naturally occurring sugars; 2) consumers should either eliminate or greatly limit their consumption of added sugars and foods containing added sugars; 3) it is the ingredient list and not the nutrition facts portion of a food's label that informs consumers of the presence of "added sugars." Available at:

http://www.health.gov/dietaryguidelines/dga2010/DietaryGuidelines2010.pdf.

74.     The 2010 Dietary Guidelines indicate that consumers should "[l]imit calorie intake from … added sugars "and "[c]hoose foods prepared with little or no added sugars." *Id.* It further

states: "*[u]se the Nutrition Facts label* to choose …. packaged foods with less total sugars, and *use the ingredients list* to choose foods with little or no added sugars." *Id. These* Guidelines indicate that:

> An important underlying principle is the need to control calorie intake to manage body weight and limit the intake of food components that increase the risk of certain chronic diseases. This goal can be achieved by consuming fewer foods that are high in sodium, solid fats, **added sugars**, and refined grains and, for those who drink, consuming alcohol in moderation.
> *Id. (emphasis added).*

75.     The 2010 Dietary Guidelines also define "added sugars":

> **"added sugars**—Sugars, syrups, and other caloric sweeteners that are added to foods during processing, preparation, or consumed separately. Added sugars do not include naturally occurring sugars such as those in fruit or milk. Names for added sugars include: brown sugar, corn sweetener, corn syrup, dextrose, fructose, fruit juice concentrates, glucose, high-fructose corn syrup, honey, invert sugar, lactose, maltose, malt syrup, molasses, raw sugar, turbinado sugar, trehalose, and sucrose".

*Id.*

76.     Further, the 2010 Dietary Guidelines make clear that consumers who wish to avoid added sugars must read the ingredient list and cannot rely on the Nutrition Facts line item listing of total sugars:

> THE FOOD LABEL: A USEFUL TOOL
>
> "Using the Food Label to Track Calories, Nutrients, and Ingredients" (Appendix 4) provides detailed guidance that can help Americans make healthy food choices.
>
> The Nutrition Facts label provides information on the amount of calories; beneficial nutrients, such as dietary fiber and calcium; as well as the amount of certain food components that should be limited in the diet, including saturated fat, trans fat, cholesterol, and sodium.
>
> **<u>The ingredients list can be used to find out whether a food or beverage contains solid fats, added sugars</u>**, whole grains, and refined grains.

*Id.* (emphasis added).

77.     Table A4-2 of the 2010 Dietary Guidelines lists a number of examples of added ingredients that can be listed as an ingredient in a food product's ingredient list. Table A4-2 states:

> Examples of Added Sugars That Can Be Listed as an Ingredient:

Anhydrous dextrose, Lactose, Brown sugar, Malt syrup, Confectioner's powdered sugar, Maltose, Corn syrup, Maple syrup, Corn syrup solids, Molasses, Dextrin Nectars (e.g., peach nectar, pear nectar), Fructose Pancake syrup, High-fructose corn syrup, Raw sugar, Honey Sucrose, Invert sugar, Sugar, and White granulated sugar.

78.     The list above does not indicate that ECJ is a form of added sugar. However, the 2010 Dietary Guidelines indicate that while ECJ is not recognized by the FDA as an ingredient name, this added sugar is sometimes listed as an ingredient on the labels of food products stating:

Other added sugars may be listed as an ingredient but are not recognized by FDA as an ingredient name. These include cane juice, evaporated corn sweetener, fruit juice concentrate, crystal dextrose, glucose, liquid fructose, sugar cane juice, and fruit nectar.

*Id.*

79.     Other federal government agencies adopt a similar approach to added sugars. For instance, the National Institute of Health 1) confirms the health risks posed by added sugar, 2) indicates the need to read the ingredient list to find added sugars and 3) utilizes a list that fails to include the false and misleading term evaporated cane juice.

80.     The National Institute of Health publishes the following about "added sugar":

Added Sugars

With both the USDA Food Patterns and the Dietary Approaches to Stop Hypertension (DASH) Eating Plan, added sugars mean more calories without more nutrients. For some people, added sugars can lead to higher levels of fats in the blood, raising their risk of heart disease.

Read the ingredients label to see if the processed food you are eating has added sugar. Key words on the label to look for:

| | |
|---|---|
| • brown sugar | • invert sugar |
| • corn sweetener | • lactose |
| • corn syrup | • maltose |
| • dextrose | • malt syrup |
| • fructose | • molasses |
| • fruit juice concentrate | • raw sugar |
| • glucose | • sucrose |
| • high-fructose corn syrup | • sugar |
| • honey | • maple syrup |

http://www.nia.nih.gov/health/publication/whats-your-plate/solid-fats-added-sugars

81.     The United States government's approach to added sugars is echoed by other scientific, educational and medical entities. For example, the American Heart Association

("AHA") states the following about "added sugar":

There are two types of sugars in American diets: naturally occurring sugars and added sugars.

- Naturally occurring sugars are found *naturally* in foods such as fruit (fructose) and milk (lactose).

- Added sugars include *any* sugars or caloric sweeteners that are *added* to foods or beverages during processing or preparation (such as putting sugar in your coffee or adding sugar to your cereal). Added sugars (or added sweeteners) can include natural sugars such as white sugar, brown sugar and honey as well as other caloric sweeteners that are chemically manufactured (such as high fructose corn syrup).

http://www.heart.org/HEARTORG/GettingHealthy/NutritionCenter/Sugars-101_UCM_306024_Article.jsp

82.    The American Heart Association cautions consumers that the Nutrition Facts panel is not the place to look for "added sugar":

**Finding added sugars in food**

Unfortunately, you can't tell easily by looking at the nutrition facts panel of a food if it contains added sugars. The line for "sugars" includes both added and natural sugars. Naturally occurring sugars are found in milk (lactose) and fruit (fructose). Any product that contains milk (such as yogurt, milk or cream) or fruit (fresh, dried) contains some *natural* sugars.

Reading the ingredient list on a processed food's label can tell you if the product contains added sugars, just not the exact amount if the product also contains natural sugars.

Names for added sugars on labels include:

- Brown sugar
- Corn sweetener
- Corn syrup
- Fruit juice concentrates
- High-fructose corn syrup
- Honey
- Invert sugar
- Malt sugar
- Molasses
- Raw sugar
- Sugar
- Sugar molecules ending in "ose" (dextrose, fructose, glucose, lactose, maltose, sucrose)
- Syrup

http://www.heart.org/HEARTORG/GettingHealthy/NutritionCenter/Sugars-101_UCM_306024_Article.jsp.  Like the United States government's list, this list also fails to

1   contain the term evaporated cane juice.

2         83.    In addition, the AHA warns that consumers "need to reduce added sugar" in their

3   diets and therefore the AHA has recommended very strict added sugar guidelines stating:

4

5         Over the past 30 years, Americans have steadily consumed more and more added
      sugars in their diets, which has contributed to the obesity epidemic. Reducing the
6      amount of added sugars we eat cuts calories and can help you improve your heart
      health and control your weight.

7         The American Heart Association recommends limiting the amount of added
      sugars you consume to no more than half of your daily discretionary calorie
8      allowance. For most American women, this is no more than 100 calories per day
      and no more than 150 calories per day for men (or about 6 teaspoons per day for
9      women and 9 teaspoons per day for men) *(emphasis added)*.

10  http://www.heart.org/HEARTORG/GettingHealthy/NutritionCenter/Sugars-

11  101_UCM_306024_Article.jsp

12        84.    Similarly, the Harvard School of Public Health takes the same position with

13  respect to added sugar. According to the Harvard School of Public Health:

14        Added Sugar in the Diet

15        Your body doesn't need to get any carbohydrate from added sugar. That's why the
      Healthy Eating Pyramid says sugary drinks and sweets should be used sparingly, if
16      at all, and the Healthy Eating Plate does not include foods with added sugars.

17        The American Heart Association (AHA) has recommended that Americans
      drastically cut back on added sugar to help slow the obesity and heart disease
18      epidemics.

19         •  The AHA suggests an added-sugar limit of no more than 100 calories per
            day (about 6 teaspoons or 24 grams of sugar) for most women and no more
20           than 150 calories per day (about 9 teaspoons or 36 grams of sugar) for most
            men.

21
         •  There's no nutritional need or benefit that comes from eating added sugar.
22           A good rule of thumb is to avoid products that have a lot of added sugar

23  http://www.hsph.harvard.edu/nutritionsource/cereal-sugar-content/.

24        85.    The Harvard School of Public Health further notes that "[S]ome ingredient lists

25  mask the amount of sugar in a product and informed consumers how to avoid being fooled by

26  such practices stating:

27

28

1

2

**How to spot added sugar on food labels**

3

Spotting added sugar on food labels can require some detective work. Though food and beverage manufacturers list a product's total amount of sugar per serving on the Nutrition Facts Panel, they are not required to list how much of that sugar is added sugar versus naturally occurring sugar. That's why you'll need to scan the ingredients list of a food or drink to find the added sugar.

4

5

6

When you eat an apple or carrot or bowl of steel-cut oatmeal, you know what you are eating—an apple or carrot or steel-cut oats. That's not the case with ready-to-eat breakfast cereals, cookies, frozen dinners, or any of the thousands of other processed foods. Think of these as terra incognita, and the ingredient list on the package as your map to it. But like an old pirate map, some ingredient lists are designed to confuse and muddle rather than lead you to the treasure. The biggest sleight of hand involves sugar. ......

7

8

9

The Nutrition Facts Label isn't much help. By law, it must list the grams of sugar in each product. But some foods naturally contain sugar, while others get theirs from added sweeteners, and food labeling laws don't require companies to spell out how much sugar is added....

10

11

12

Why does this matter? …

13

The American Heart Association (AHA) has recommended that Americans drastically cut back on added sugar to help slow the obesity and heart disease epidemics. (2) The AHA's suggested added sugar threshold is no more than 100 calories per day (about 6 teaspoons or 24 grams of sugar) for most women and no more than 150 calories per day (about 9 teaspoons or 36 grams of sugar) for most men.

14

15

16

http://www.hsph.harvard.edu/nutritionsource/cereal-sugar-content/ .

17

18

86.     While the Harvard School of Public Health notes it is possible to compare different products and utilize math to figure out the amount (as opposed to the presence) of added sugar in certain types of properly labeled products that disclose the presence of added sugar, the comparison approach  suggested by the school does not work when 1) the added sugar is disguised by a false and misleading term like ECJ that conceals the presence of added sugar. According to the Harvard School of Public Health:

19

20

21

22

23

Nutrition sleuths can compare the labels of two similar products—one with [added] sugar, one without—and do a little math to figure out how much sugar is added sugar. For example, a 6-ounce, fat-free plain Stonyfield Farm yogurt has 12 grams of sugar. The ingredients list shows no added sugar, so all of the yogurt's sugar comes from lactose, the sugar that is naturally found in milk. A fat-free vanilla Stonyfield Farm yogurt has 24 grams of sugar; the extra 12 grams is added sugar from "naturally milled organic sugar."

24

25

26

27

*Id.*

28

87.     This approach does not work where there is no sweetener listed in the ingredient list that is recognized as an added sugar. In such a situation it is only possible to determine that one product has more total sugar than another but because of the concealed added sugar this would appear to consumers as merely the difference between levels of naturally occurring sugar in the two products.  It also is impractical to expect consumers who make purchase decisions in a fraction of a second to have to perform mathematical calculations utilizing information gleaned from two separate product labels.

88.     A term like ECJ that purports to be a juice conceals the presence of added sugars because by definition, 100% juice is a source of natural sugars and no added sugars. Thus as confirmed by University of Florida "100% fruit juice has no added sugars." https://edis.ifas.ufl.edu/pdffiles/FY/FY135800.pdf. Thus, accurate descriptions are necessary in ingredient lists because:

> although the [nutritional facts] panel is helpful for finding total sugar, it does not differentiate between natural sugar and added sugars. For example, sugar would be listed on the Nutrition Facts Panel for both 100% orange juice and an orange drink, but only the orange drink will have sugar added to it.

*Id.*

89.     The Mayo Clinic also is on record confirming 1) the difference between added sugar and naturally occurring sugar; 2) the health risks posed by added sugar; 3) the need to avoid added sugars and limit consumption of foods containing added sugars; 4) the importance of the ingredient list in identifying added sugar; 5) the inability to use the Nutrition Facts line item for sugar to determine whether added sugar was present and 6) the numerous names used for added sugars. According to the Mayo Clinic:

> **Added sugar: Don't get sabotaged by sweeteners -**
>
> **Do you know how much sugar is in your diet? See why added sugar is a concern and how you can cut back.**
>
> "Added sugar" refers to sugars and syrups added to foods during processing.
>
> **Why is added sugar a problem?**
>
> Foods with a lot of added sugar contribute extra calories to your diet but provide little nutritional value. In addition, added sugar is often found in foods that also contain solid fats.

Eating too many foods with added sugar and solid fats sets the stage for potential health problems, such as:

- **Poor nutrition.** If you fill up on foods laden with added sugar, you may skimp on nutritious foods, which means you could miss out on important nutrients, vitamins and minerals. Regular soda plays an especially big role. It's easy to fill up on sweetened soft drinks and skip low-fat milk and even water — giving you lots of extra sugar and calories and no other nutritional value.

- **Weight gain.** There's usually no single cause for being overweight or obese. But added sugar may contribute to the problem. Many foods and beverages contain lots of sugar, making them more calorie-dense. When you eat foods that are sugar sweetened, it is easier to consume more calories than if the foods are unsweetened.

- **Increased triglycerides.** Triglycerides are a type of fat in the bloodstream and fat tissue. Eating an excessive amount of added sugar can increase triglyceride levels, which may increase your risk of heart disease.

- **Tooth decay.** All forms of sugar promote tooth decay by allowing bacteria to proliferate and grow. The more often and longer you snack on foods and beverages with either natural sugar or added sugar, the more likely you are to develop cavities, especially if you don't practice good oral hygiene.

In the 2010 Dietary Guidelines for Americans, the U.S. Department of Agriculture (USDA) recommends that no more than about 5 to 15 percent of your total daily calories come from added sugar and solid fats.

The American Heart Association has even more-specific guidelines for added sugar — no more than 100 calories a day from added sugar for most women and no more than 150 calories a day for most men. That's about 6 teaspoons of added sugar for women and 9 for men.

Unfortunately, most Americans get more than 22 teaspoons — or 355 calories — of added sugar a day, which far exceeds these recommendations.

http://www.mayoclinic.com/health/added-sugar/my00845.

90.     The Mayo Clinic Reports that:

Identifying added sugar can be confusing. Most people look at the Nutrition Facts part of the label for the total number of grams of sugar in a serving of the product. It's important to realize, however, that the amount shown includes natural sugars found in certain ingredients, such as grain, fruit and milk. The only reliable way to identify added sugar is to look at the ingredient list….Know that sugar goes by many different names, though.

**Different names for added sugar**

Sugar goes by many different names, depending on its source and how it was made. This can also make it hard to identify added sugar, even when you read ingredient lists and food labels.

http://www.mayoclinic.com/health/added-sugar/my00845.

91.     Not only do government and nationally recognized health institutions and associations advise on the manners in which to detect and determine added sugar, but reputable food related companies such as grocery store chains and food manufacturers have adopted a similar approach with respect to added sugars: For example the Shoprite chain of grocery stores states that:

> The nutrition panel of packaged foods lists the total amount of sugars in a serving of food. This number includes sugars found naturally in food as well as the sugar that is added. The ingredient list must state all the sugars which are added to the product.
>
> Sugar can often be "disguised" on food labels since there are many different forms and names for sugar. ….
>
> What's the bottom line?
>
> Choose healthy foods that contain natural sugars most often and limit your consumption of foods high in added sugar. Be an informed shopper. Read the ingredient panel to be sure you are truly getting a product without a lot of added sugar.

http://www.shoprite.com/for-your-family/dietitians-corner/archives/sugar-by-any-other-name-is-still-sugar/

92.     Similarly, the Publix chain of grocery stores states:

> Controlling added sugars is important because it helps us avoid excess calories, which can lead to increased weight and triglycerides—two factors that can put you at higher risk of obesity, heart attack and stroke.
>
> The AHA suggests women limit their intake of added sugars to 6 teaspoons daily; men should limit intake to 9 teaspoons. The recommendations do not apply to naturally occurring sugars, such as those found in fruits, vegetables or dairy products.
>
> Check food label ingredients for hidden sugars like corn syrup, fructose, dextrose, molasses or evaporated cane juice.

http://www.publix.com/wellness/greenwise/products/ProductDetail.do?id=1930.

93.     Similarly, Atkins Nutritionals, the company behind the Atkins line of food products states:

> **Finding Added Sugars**
>
> Taking control of your health is about focusing on carbohydrate foods that are high in nutrients and fiber. That's why added sugar in any form should be avoided in the weight loss phases of Atkins. No matter what it's called sugar has virtually no nutritional value.

**What's the Difference?**

*Naturally occurring sugars,* found in dairy products or in fruit or vegetables, for instance, are an organic part of the food, and they are perfectly acceptable. An example: sugar free ice cream has some naturally occurring sugars from the milk and cream with which it is made. That same ice cream might also include some strawberries (which contain fruit sugar). Both sugars are natural, making the ice cream suitable for healthy lifestyles.

*Added sugars* lurk in many foods and not just in the form of sucrose (table sugar). Added sugar is often disguised with misleading names in packaged foods. These include cane sugar and evaporated cane juice, brown sugar, beet sugar or any other ingredient ending in "sugar," as well as syrups (or syrup solids) such as maple, corn or cane. Many ingredients ending in "ose" are also sugars, although exceptions include sucralose and cellulose.

To complicate matters, a natural sugar, such as fructose, is considered an added sugar from a regulatory point of view and can also take the form of an added sugar when it's included in processed foods. The Nutrition Facts panel tells you the number of grams of sugars in a serving, but because it lumps together all sugars, it does not distinguish between integral and added sugars. Instead, you'll need to go to the ingredients list. If you see fructose listed instead of fruit, for example, even though that sugar has a natural source, you'll know it's an added ingredient you should limit your exposure to. Here are various aliases for added sugars:  brown sugar, cane syrup, corn sweetener, corn syrup, corn syrup solids, dextrose, fructose, fruit juice concentrate, galactose, glucose, high-fructose corn syrup, honey, invert sugar, lactose, malt, maltose, malt syrup, maple syrup, molasses, raw sugar, rice syrup, and sucrose.

http://www.atkins.com/Science/Articles---Library/Sugar/Finding-Added-Sugars.aspx

94.     Lifeway's food products with ECJ as an ingredient have significant added sugar. This added sugar is hidden from consumers, such as the Plaintiff, by Lifeway's unlawful practice of using the false and misleading term "evaporated cane juice" in the ingredient lists of its food products instead of the term sugar which is the name mandated by state and federal law. The labeling laws violated by Lifeway were designed to ensure that consumers receive the information they need to make informed decisions so that, for example, consumers looking for added sugar can find it when they look for it in the ingredient list.

95.     The Plaintiff would not have bought the Lifeway's food products he bought had he known they contained "added sugar." Although Plaintiff read the ingredient lists of the Lifeway food products he purchased, he did not realize that evaporated cane juice was 1) sugar or a syrup; 2) a form of added sugar; 3) a refined sugar or 4) not a juice. Plaintiff's failure to realize that evaporated cane juice was 1) sugar or a syrup; 2) a form of added sugar; 3) a refined sugar or 4)

1   not a juice was reasonable and any reasonable consumer would have been mislead by the false

2   and misleading term evaporated cane juice.

3       96.    Plaintiff would not have bought the Lifeway food products he purchased if he had

4   known they contained an added sugar or syrup; a refined sugar or sweetener; or that evaporated

5   cane juice was not a juice but rather sugar or syrup and an added sugar and a refined sweetener.

6   The Nutrition Facts panels of the Lifeway food products purchased by Plaintiff did not reveal the

7   presence of added sugars, and the false and misleading term "evaporated cane juice" in the

8   ingredient list concealed the presence of any added sugar or refined sugar.

9       97.    When Plaintiff read the ingredient list, he did not realize that there was added

10  sugar in the Defendant's food products because he did not recognize the term "ECJ" as being

11  sugar because the term (which the FDA has held to be a false and misleading term) misled him.

12  ECJ was not the common or usual term for the ingredient in question which was actually a refined

13  form of sugar or cane syrup.  Defendant's use of a term that included the word juice, but not the

14  words sugar or syrup, failed to accurately characterize the ingredient in question and the FDA

15  concurs with this allegation. While Plaintiff could determine the total amount of sugars in the

16  product from the nutritional facts table assuming it was accurate, he could not determine if there

17  were any added sugars/syrups because the Defendant's ingredient lists concealed the presence of

18  such added sugars by the use of a the false and misleading term "ECJ."  Plaintiff could also not

19  determine the relative amount of any added sugars because the term "ECJ" was not recognized by

20  him as a sugar and thus its relative position in the ingredient list (where ingredients are required

21  to be listed in descending order by weight) did not inform him of the level of added sugar.

22      98.    Defendant's failure to utilize either the term "sugar" or the term "syrup" to

23  describe the ingredient it identified as evaporated cane juice failed to reveal the basic nature of

24  the ingredient and its characterizing properties (*i.e.*, that the ingredients are sugars or syrups).

25  According to the FDA:

26      FDA's regulatory approach for the nomenclature of sugar and syrups is that sugar
        is a solid, dried, and crystallized food; whereas syrup is an aqueous solution or
27      liquid food. FDA's regulations permit the term "sugar" as part of the name for
        food that is solid, dried, and crystallized, specifically the standards of identity for
28      dextrose monohydrate (21 CFR 168.111) and lactose (21 CFR 168.122), and the

GRAS regulation for sucrose (21 CFR 184.1854). FDA's regulations provide for the terms "syrup" or "sirup" for food that is liquid or is an aqueous solution, specifically the standards of identity for glucose sirup (21 CFR 168.120), cane sirup (21 CFR 168.130), maple sirup (21 CFR 168.140), sorghum sirup, (21 CFR 168.160), and table sirup (21 CFR 168.180). FDA's approach is consistent with the common understanding of sugar and syrup as referenced in a dictionary.

99.     Based on the inclusion of the word "evaporated" in the term evaporated cane juice, Plaintiff would show that the sweetener in the Defendant's food products is sugar, a dried crystallized ingredient, as defined in 21 C.F.R. § 101.4(b)(20) and 21 C.F.R. § 184.1854. However, even if the added sugar was a form of cane syrup, it would make no difference. In either case, the Defendant utilized a false and misleading term, "evaporated cane juice", to conceal the fact that Defendant was utilizing an added sugar to sweeten its products.  In either case the false and misleading term, "evaporated cane juice," failed to reveal the basic nature of the ingredient and its characterizing properties (*i.e.*, that the ingredients are sugars or syrups).

100.     While FDA regulations provide that "[t]he name of an ingredient shall be a specific name and not a collective (generic) name" the regulations expressly provide that "[f]or purposes of ingredient labeling, the term *sugar*" shall refer to sucrose, which is obtained from sugar cane or sugar beets in accordance with the provisions of 184.1854 of this chapter. 21 C.F.R. § 101.4(b)(20)(emphasis in original). 21 C.F.R. § 184.1854 list the chemical names, CAS number and structure of sugar/sucrose (C12 H22 O11, CAS Reg. No. 57-50-11-1, β-D-fructofuranosyl-α-D-glucopyranoside) as well as its common names (sugar, sucrose, cane sugar, or beet sugar). 21 C.F.R. § 184.1854 also confirms that the definition of sugar/sucrose covers products "obtained by crystallization from sugar cane or sugar beet juice that has been extracted by pressing or diffusion, then clarified and evaporated." As such, Defendant was required to identify the ingredient in question as sugar and could not call it evaporated cane juice.

101.     The term "sugar" indicates to reasonable consumers the ingredient "sugar." Similarly, the term "syrup" connotes a type of sweetener that contains sugar.  "Syrup" is defined by numerous dictionaries as some variation of "a concentrated solution of sugar in water," "a concentrated solution of sugar in water;" "a concentrated solution of a sugar, such as sucrose, in water;" "a thick sticky liquid consisting of a concentrated solution of sugar and water;" "a very

1  sweet, thick light colored liquid made by dissolving sugar in water;" "a sweet liquid made from

2  sugar and water;" etc. Thus, had the Defendant used  the words "sugar" or "syrup" to describe the

3  ingredient it described as evaporated cane juice, it could have informed consumers of the

4  presence of added sugar. The Defendant's failure to utilize either term concealed the presence of

5  added sugars in the Defendant's food products.

6      102.    Defendant further concealed the presence of added sugars in its food products by

7  utilizing the false and misleading term "evaporated cane juice" to describe an added sweetener

8  that was <u>not</u> in fact "juice," but was rather "sugar." According to the FDA:

> The product extracted from sugar cane is either "sugar" (21 CFR §101.4(b)(20)
> and § 184.1854), or "cane syrup" if the product conforms to the standard of
> identity for "cane sirup" (21 CFR §168.130)…. These sweeteners should not be
> declared in the ingredient declaration by names which suggest that the ingredients
> are juice, e.g "evaporated juice" or "nectar", or in such a way as to suggest that the
> ingredients contain no sugar, e.g."natural extract of _". Such representations .... fail
> to reveal the basic nature of the food and its characterizing properties, i.e. the
> ingredients are sugar or syrups. They are not juice. .. .. .. As you know, many of
> FDA's criminal prosecutions of manufacturers and seizures of fruit juices for
> economic adulteration have involved precisely these sweeteners being
> misrepresented in such a way as to mislead consumers. ......We trust that the
> foregoing will be helpful in providing guidance on the appropriate labeling of
> these ingredients.

16  http://www.regulations.gov/#!documentDetail;D=FDA-2009-D-0430-0005.

17      103.    The FDA has repeatedly made clear that:

> FDA's current policy is that sweeteners derived from sugar cane syrup should not
> be declared as "evaporated cane juice" because that term falsely suggests that the
> sweeteners are juice…. "Juice" is defined by 21 CFR 120.1(a) as "the aqueous
> liquid expressed or extracted from one or more fruits or vegetables, purees of the
> edible portions of one or more fruits or vegetables, or any concentrates of such
> liquid or puree." Although FDA does not dispute that sugar cane is a member of
> the vegetable kingdom in the broad sense of classifying an article as "animal,"
> "vegetable," or "mineral," the agency considers the term "vegetable" in the context
> of the juice definition to refer more narrowly to edible plant parts that consumers
> are accustomed to eating as vegetables in their diet. Sugar cane is not a vegetable
> in this sense. While consumers can purchase pieces of sugar cane, consumers do
> not eat sugar cane as a "vegetable" but instead use it as a source of sugar by
> chewing on the cane or its fibers or by placing the cane in a beverage to sweeten it.
> There are other plant juices used for human food that similarly are not "vegetable
> juice" or "fruit juice" for purposes of the juice definition; e.g., maple syrup and
> sorghum syrup. In summary, FDA's view is that the juice or extract of sugar cane
> is not the juice of a plant that consumers are accustomed to eating as a vegetable in
> their diet and is not, therefore, "juice" as contemplated by the regulation defining
> that term.

28

http://www.fda.gov/Food/GuidanceRegulation/GuidanceDocumentsRegulatoryInformation/Label ingNutrition/ucm181491.htm.

104.    The FDA has further confirmed that:

"evaporated cane juice" and other sweeteners derived from sugar cane syrup are not "juice" as defined in 21 CFR 120.1…. Sweeteners derived from sugar cane syrup should not be listed in the ingredient declaration by names which suggest that the ingredients are juice, such as "evaporated cane juice." FDA considers such representations to be false and misleading under section 403(a)(1) of the Act (21 U.S.C. 343(a)(1)) because they fail to reveal the basic nature of the food and its characterizing properties (i.e., that the ingredients are sugars or syrups) as required by 21 CFR 102.5 … sweeteners derived from sugar cane syrup are not juice…

105.    It was thus false and misleading for the Defendant to use the term "evaporated cane juice" to identify the added sugar derived from sugar cane it used as an ingredient. Moreover, reasonable consumers do not consider juice to be a sugar or syrup or a refined sugar. Thus, it was false and misleading for the Defendant to use the term "evaporated cane juice" to describe the refined sugar (or in the alternative syrup) its food products used as a sweetener. Nor do reasonable consumers consider juice to be an added sugar. To the contrary, consumers are instructed by the federal government and other entities that if they wish to avoid added sugar they should look for juice because juice is not an added sugar, nor does it contain added sugar and is thus a way to avoid added sugars. Thus, it was false and misleading for the Defendant to use the term "evaporated cane juice" to describe the added sugar in its food products used as a sweetener.

106.    Moreover, it is clear that the term "evaporated cane juice" was intended to, and did, mislead consumers about the presence of sugars. In fact, industry participants have openly discussed this act.

107.    For example, the in-house magazine for Whole Foods (which has been sued for the illegal and deceptive use of the term "ECJ") contains an article entitled "Could Cane Juice Evaporate?" which details the following:

A regulatory issue on the U.S. Food and Drug Administration's (FDA) backburner, and one that is therefore flying under the radar, involves the fate of the sweetener evaporated cane juice. Like high fructose corn syrup's ongoing name battle, this is a question of language, not substance. According to Jim Morano, Ph.D., technical affiliate of Suzanne's Specialties, New Brunswick, NJ, FDA has taken exception to the use of the word "juice" to describe this sugar cane-based sweetener on product labels…..The agency feels that the term fails to reveal the defining property of the sweetener, that the ingredients are sugars or syrups, and so

the term may be false and misleading to consumer.

"It's only been the last 15 years that we've had the ability to use sugar. In the beginning in the health food industry, sugar was a bad word," says Morano. Sugar was often considered to be a violation of the natural tenet, even though it is, of course, natural. Though times have changed, this negative connotation still clings to sugar for many shoppers. Therefore, if FDA takes away the term "evaporated cane juice," essentially dictating that it be referred to as a type of cane sugar, Morano believes the jig may be up for this sweetener, at least when it comes the natural market.
http://www.wholefoodsmagazine.com/grocery/features/sweeteners-rising.

108.    Similarly, according to the CEO of ASSURKKAR Sugar Company in Costa Rica, which provides raw sugar to U.S. companies, the term is wrongly used in the food industry, "prostituted" he put it. "Nowadays the food companies are trying to sell more 'natural' products, so they use the most impressive or high impact wording to call the customers' attention,"    he said. In reality, the "evaporated cane juice" that is used in food products is a very processed form of sugar, unequivocally the same as refined white sugar.

http://www.processedfreeamerica.org/index.php?option=com_content&view=article&id=535:raw-sugar.

109.    Additionally, Judy Sanchez, a spokesperson for the U.S. Sugar Corp., confirms that "All sugar is evaporated cane juice," "They just use that for a natural-sounding name for a product."   http://www.npr.org/blogs/thesalt/2012/10/18/163098211/evaporated-cane-juice-sugar-in-disguise.

110.    Defendant's use of the word "cane" was not sufficient to advise Plaintiff that "evaporated cane juice" was sugar.  The term "cane" is not exclusively a reference to sugar or sugar cane. Many other types of cane exist and are used in foods, for example, bamboo cane and sorghum cane, both which produce juice.  See e.g. 21 C.F.R. § 168.160 ("sorghum cane"). Corn is a form of cane. There are over 1000 species just of bamboo and over 10,000 members of the family of plants that includes corn and sugar cane. Most common berries such as blackberries, raspberries, blue berries and goji berries grow on canes and are referred to as "cane berries." Of course, Defendant utilized the term "cane" with the term "juice," a defined, regulated term not commonly associated with sugar or added sugar.

111.    Moreover, the cane sugar utilized as an ingredient by Lifeway was far removed

from natural sugar cane or unrefined sugar cane juice. Natural sugar cane is described by sources as healthy and nutritious, containing vitamins, minerals, enzymes, fibers, and phytonutrients that help the body digest naturally occurring sugars, such as lactose, glucose and fructose. It also is reported to contain vitamins A, C, B1, B2, B6, niacin, and pantothenic acid, which work synergistically with the minerals to nourish the body. Sugar cane also reportedly contains a unique mix of antioxidant polyphenols. The polyphenols, vitamins, and minerals present in sugar cane are claimed to help slow down the absorption of the sugars and prevent the sharp rise in blood sugar levels associated with refined sugar. [4] Similarly, raw sugar cane juice has been described as a "wonder food" that has many beneficial properties. For example, one website states:

> Sugarcane is a tall grass with a stout, jointed and fibrous stalk that looks similar to bamboo. As a member of the grass family, its juice has a high potency equivalent to wheatgrass juice, only with less chlorophyll and more sugar content. However, counter to what you might think, sugarcane juice contains only about fifteen percent total sugar content, all of which is in a raw unrefined form. The rest of the juice consists of water brimming with an abundance of vitamins and minerals. Sugarcane is rich in calcium, chromium, cobalt, copper, magnesium, manganese, phosphorous, potassium and zinc. It also contains iron and vitamins A, C, B1, B2, B3, B5, and B6, plus a high concentration of phytonutrients (including chlorophyll), antioxidants, proteins, soluble fiber and numerous other health supportive compounds. Working synergistically, these nutrients provide a supremely health-promoting food which has been studied for its role in fighting cancer, stabilizing blood sugar levels in diabetics, assisting in weight loss, reducing fevers, clearing the kidneys, preventing tooth decay, and a host of other health benefits.

http://www.processedfreeamerica.org/index.php?option=com_content&view=article&id=535:raw-sugar. The "evaporated cane juice" in the Lifeway's food products contains none of these health benefits because during processing the nutrients have been pressed, boiled and strained out.[5]

112.    Thus, evaporated cane juice is neither "juice" nor only subject to "evaporation" – a process that absent pressing, boiling, and separation would leave the sugar crystals with their

---

[4] *See* McCaffree, D., The Truth About Evaporated Cane Juice, Processed-Free America (Nov. 1, 2010) *available at* http://www.processedfreeamerica.org/resources/health-news/405-the-truth-about-evaporated-cane-juice?format=pdf.

[5] During refinement, the sugarcane juice is pressed from the sugar cane and boiled at high temperatures. The boiling destroys the enzymes and many of the nutrients. The juice is then separated into a sugar stream and a molasses stream. Most of the minerals from the sugar cane go into the molasses, leaving the sugar stream virtually void of nutrients. To further refine it (removing any remaining nutrients), the sugar stream is then crystallized through evaporation." McCaffree, D., The Truth About Evaporated Cane Juice, Processed-Free America (Nov. 1, 2010),

nutrients still intact. [6]*Id.* In truth, evaporated cane juice is little different than added refined sugar. Refined sugar and evaporated cane juice both have 111 calories per ounce. Both types of sugar come from the same cane crop, and they are both about 99% sucrose (*i.e.*, empty calories) and not the 15% sucrose content ascribed to raw sugar cane juice.[7]

113.    Lifeway's not only hides the sugar in its products by using the term illegal ECJ, it hides the fact that the ingredient it refers to as ECJ is a sweetener at all. For instance, Lifeway fails to even list evaporated cane juice in its website instead stating that its "Kefir products are sweetened with Organic Cane Sugar not High Fructose Corn Syrup." http://www.lifeway.net/HealthWellness/Nutrition/BetterIngredients.aspx

114.    Defendant's use of the term "evaporated cane juice" misleads consumers into paying a premium price for inferior or undesirable ingredients or for products that contain ingredients not listed on the label.

**D.      Defendant has Knowingly Violated Numerous Federal and California Laws**

115.    Defendant has violated California Health & Safety Code § 110390 which makes it unlawful to disseminate false or misleading food advertisements or statements on products and product packaging, labeling or any other medium used to directly or indirectly induce the purchase of a food product.

116.    Defendant has violated California Health & Safety Code § 110395 which makes it unlawful to manufacture, sell, deliver, hold or offer to sell any falsely advertised food.

117.    Defendant has violated California Health & Safety Code §§ 110398 and 110400 which make it unlawful to advertise misbranded food or to deliver or proffer for delivery any food that has been falsely advertised.

118.    Defendant has violated California Health & Safety Code § 110760 which makes it unlawful for any person to manufacture, sell, deliver, hold, or offer for sale any food that is

---

[6] *Id.*

[7] *See id.* (stating that "[a]nother important aspect of natural sugar cane is the balance of the different types of sugars. Raw natural sugar has a balance of sucrose, glucose, and fructose, whereas refined sugars are almost exclusively sucrose (the fructose and glucose have been washed out). The more sucrose, the more it raises your blood sugar").

1    misbranded.

2         119.    Defendant has violated California Health & Safety Code § 110765 which makes it

3    unlawful for any person to misbrand any food.

4         120.    Defendant has violated California Health & Safety Code § 110770 which makes it

5    unlawful for any person to receive in commerce any food that is misbranded or to deliver or

6    proffer for delivery any such food.

7         121.    Defendant has violated California Health & Safety Code § 110725 which makes it

8    unlawful for any person to fail to list each ingredient by its common and usual name.

9         122.    Defendant has violated California Health & Safety Code § 110760 which makes it

10   unlawful for any person manufacture, sell, deliver, hold or offer for sale any food that is

11   misbranded.

12        **E.      Plaintiff Purchased Defendant's Misbranded Food Products**

13        123.    Plaintiff cares about the nutritional content of food and seeks to maintain a healthy

14   diet.  During the Class Period, Plaintiff spent more than twenty-five dollars ($25.00) on the

15   Purchased Products.

16        124.    Plaintiff read and reasonably relied on the labels on Defendant's Purchased

17   Products before purchasing them as described herein.  Plaintiff relied on Defendant's labeling as

18   described herein and based and justified the decision to purchase Defendant's products, in

19   substantial part, on the label.

20        125.    At point of sale, Plaintiff did not know, and had no reason to know, that the

21   Purchased Products were unlawful and misbranded as set forth herein, and would not have bought

22   the product had he known the truth about it, *i.e.*, that the product was illegal to purchase and

23   possess.

24        126.    After Plaintiff learned that Defendant's Purchased Products were falsely labeled,

25   he stopped purchasing them.

26        127.    As a result of Defendant's unlawful misrepresentations, Plaintiff and thousands of

27   others in California and throughout the United States, purchased the Purchased Products and the

28   Substantially Similar Products at issue.

128.   Defendant's labeling as alleged herein is false and misleading and was designed to increase sales of the products at issue.  Defendant's misrepresentations are part of its systematic labeling practice and a reasonable person would attach importance to Defendant's misrepresentations in determining whether to purchase the products at issue.

129.   A reasonable person would also attach importance to whether Defendant's products are "misbranded," i.e., legally salable, and capable of legal possession, and to Defendant's representations about these issues in determining whether to purchase the products at issue. Plaintiff would not have purchased Defendant's products had they known they were not capable of being legally sold or held.

130.   Plaintiff's purchases of the Purchased Products damaged Plaintiff because misbranded products cannot be legally sold, possessed, have no economic value, and are legally worthless.

### Plaintiff Bob Figy

131.   Plaintiff Figy cares about the nutritional content of food and seeks to maintain a healthy diet.  Starting approximately one year before this suit was filed until shortly before his claims were filed, Plaintiff Figy read the labels on Defendant's Misbranded Food Products, including the Ingredient, "evaporated cane juice" claims on the labels, before purchasing them. Based on those representations, Plaintiff purchased several Lifeway food products at grocery stores and third-party retailers in and around San Francisco, California.  At point of sale, Plaintiff did not know, and had no reason to know, that Defendant's "evaporated cane juice" claims were unlawful and unauthorized as set forth herein.  Had Plaintiff known Defendant's products that he purchased contained added sugar, he would not have purchased the Products.  As a result, Plaintiff suffered injury-in-fact and lost money.

132.   Plaintiff would show that he seeks to avoid and/or minimize added sugar in the food products that he purchases.  Plaintiff would show that at the time he read the labels of Defendant's food products, he attempted to determine whether Defendant's food products contained "added sugar" by reading the ingredient list.  He would further show that when he read the ingredient list of Defendant's products to determine if sugar had been added as an ingredient,

"sugar" was not listed, thus he was led to believe that Defendant's food products that he purchased did not contain added sugar as an ingredient.  He did not know that the ingredient "evaporated cane juice" was, in reality, sugar at the time he made his purchase.  Had he known "evaporated cane juice" was the same thing as added sugar or syrup, Plaintiff would not have purchased Defendant's food products.  Plaintiff would show that while he did not know what evaporated cane juice was at the time he purchased Defendant's food products, because of the fact it used the term "juice", it sounded like something healthy.

133.    Plaintiff is not claiming that he believed ECJ was a "healthy sugar" or "healthier form of sugar" at the time of purchase; but rather, that at the time of purchase he believed ECJ was some type of ingredient that was healthier than sugar due to its inclusion of the word juice and its omission of the words sugar or syrup. At the time of purchase he did not realize this ingredient was sugar, let alone a refined sugar or an added sugar.  To the extent ECJ suggests that the product is derived from a juice, it plausibly suggests that ECJ is healthier than refined sugars and syrups and that products that contain ECJ are healthier products than those that contain added sugar as an ingredient. Plaintiff alleges that he believed the term ECJ was a healthier term than sugar or syrup or conversely that sugar was an unhealthier term than ECJ.  While this equates to alleging that Plaintiff believed ECJ was healthier than sugar, this is quite different, however, from alleging ECJ was a healthier form of sugar. In fact, Plaintiff claims is that he was deceived because ECJ is really sugar or dried cane syrup whose presence as an ingredient was concealed from Plaintiff and not a claim that ECJ is a healthier form of sugar. Plaintiff's allegation is that ECJ is really the same thing as sugar and therefore should have been labeled as sugar. Plaintiff alleges that because Plaintiff was deceived about ECJ being healthier than sugar, he was deceived about Lifeway foods being healthier than other similar manufacturer's food products that listed sugar instead of ECJ. Plaintiff's purchasing decisions were affected by Lifeway's deceptive practice of labeling sugar as ECJ. Plaintiff wished to avoid added sugar or syrup added as an ingredient.  He did not recognize ECJ as an added sugar or syrup added as an ingredient.

134.    Defendant's labeling, advertising and marketing as alleged herein are false and misleading and were designed to increase sales of the products at issue.    Defendant's

misrepresentations and material omissions are part of an extensive labeling, advertising and marketing campaign, and a reasonable person would attach importance to Defendant's misrepresentations and material omissions in determining whether to purchase the products at issue.

135.    A reasonable person would also attach importance to whether Defendant's products were legal for sale, and capable of legal possession, and to Defendant's representations about these issues in determining whether to purchase the products at issue. Plaintiff would not have purchased Defendant's Misbranded Food Products had he known they were not capable of being legally sold or held.

## **CLASS ACTION ALLEGATIONS**

136.    Plaintiff brings this action as a class action pursuant to Federal Rule of Procedure 23(b)(2) and 23(b)(3) on behalf of the following class:

> All persons in the United States, or in the alternative, all persons in the state of California who, within the last four years, purchased Defendant's food products: (1) labeled with the ingredient, "Evaporated Cane Juice" (the "Class").

137.    The following persons are expressly excluded from each Class:  (1) Defendant and its subsidiaries and affiliates; (2) all persons who make a timely election to be excluded from the proposed Class; (3) governmental entities; and (4) the Court to which this case is assigned and its staff.

138.    This action can be maintained as a class action because there is a well-defined community of interest in the litigation and each proposed Class is easily ascertainable.

139.    Numerosity:  Based upon Defendant's publicly available sales data with respect to the misbranded products at issue, it is estimated that each Class numbers in the thousands, and that joinder of all Class members is impracticable.

140.    Common Questions Predominate:  This action involves common questions of law and fact applicable to each Class member that predominate over questions that affect only individual Class members.  Thus, proof of a common set of facts will establish the right of each Class member to recover.  Questions of law and fact common to each Class member include:

a. Whether Defendant engaged in unlawful, unfair or deceptive business practices by failing to properly package and label its food products it sold to consumers;

b. Whether the food products at issue were misbranded as a matter of law;

c. Whether Defendant made unlawful and misleading ingredient claims with respect to its food products sold to consumers;

d. Whether Defendant violated California Bus. & Prof. Code § 17200, *et seq.*, California Bus. & Prof. Code § 17500, *et seq.*, the Consumers Legal Remedies Act, Cal. Civ. Code §1750, *et seq.*, California Civ. Code § 1790, *et seq.*, 15 U.S.C. § 2301, *et seq.*, and the Sherman Law;

e. Whether Plaintiff and the Class are entitled to equitable and/or injunctive relief;

f. Whether Defendant's unlawful, unfair and/or deceptive practices harmed Plaintiff and the Class; and

g. Whether Defendant was unjustly enriched by its deceptive practices.

141. <u>Typicality</u>: Plaintiff's claims are typical of the claims of the members of each Class because Plaintiff bought Defendant's Misbranded Food Products during the Class Period. Defendant's unlawful, unfair and/or fraudulent actions concern the same business practices described herein irrespective of where they occurred or were experienced. Plaintiff and each Class sustained similar injuries arising out of Defendant's conduct in violation of California law. The injuries of each member of each Class were caused directly by Defendant's wrongful conduct. In addition, the factual underpinning of Defendant's misconduct is common to all Class members of each class and represents a common thread of misconduct resulting in injury to all members of each Class. Plaintiff' claims arise from the same practices and course of conduct that give rise to the claims of the member of each Class and are based on the same legal theories.

142. <u>Adequacy</u>: Plaintiff will fairly and adequately protect the interests of each Class. Neither Plaintiff nor Plaintiff's counsel have any interests that conflict with or are antagonistic to the interests of either Class's members. Plaintiff has retained highly competent and experienced class action attorneys to represent their interests and those of the members of each Class. Plaintiff and Plaintiff's counsel have the necessary financial resources to adequately and vigorously litigate this class action, and Plaintiff and counsel are aware of their fiduciary responsibilities to the members of each class and will diligently discharge those duties by seeking the maximum

possible recovery for each Class.

143.  Superiority:   There is no plain, speedy or adequate remedy other than by maintenance of this class action.  The prosecution of individual remedies by members of each Class will tend to establish inconsistent standards of conduct for Defendant and result in the impairment of each Class member's rights and the disposition of their interests through actions to which they were not parties.  Class action treatment will permit a large number of similarly situated persons to prosecute their common claims in a single forum simultaneously, efficiently, and without the unnecessary duplication of effort and expense that numerous individual actions would engender.  Further, as the damages suffered by individual members of the Class may be relatively small, the expense and burden of individual litigation would make it difficult or impossible for individual members of the Class to redress the wrongs done to them, while an important public interest will be served by addressing the matter as a class action.  Class treatment of common questions of law and fact would also be superior to multiple individual actions or piecemeal litigation in that class treatment will conserve the resources of the Court and the litigants, and will promote consistency and efficiency of adjudication.

144.  The prerequisites to maintaining a class action for injunctive or equitable relief pursuant to FED. R. CIV. P. 23(b)(2) are met as Defendant has acted or refused to act on grounds generally applicable to each Class, thereby making appropriate final injunctive or equitable relief with respect to each Class as a whole.

145.  The prerequisites to maintaining a class action pursuant to FED. R. CIV. P. 23(b)(3) are met as questions of law or fact common to each class member predominate over any questions affecting only individual members, and a class action is superior to other available methods for fairly and efficiently adjudicating the controversy.

146.  Plaintiff and Plaintiff's counsel are unaware of any difficulties that are likely to be encountered in the management of this action that would preclude its maintenance as a class action.

# CAUSES OF ACTION

## FIRST CAUSE OF ACTION
### (Business and Professions Code § 17200, *et seq.*
### Unlawful Business Acts and Practices)

147. Plaintiff incorporates by reference each allegation set forth above.

148. Defendant's conduct constitutes unlawful business acts and practices.

149. Under California Law, unlawful injury causing conduct, such as Defendant's unlawful sale of an illegal product, is the only element necessary for the UCL claim. Plaintiff's claims here are based upon California law which is identical to the federal laws California adopted.

150. Defendant sold Plaintiff and the class the Purchased Products and Substantially Similar Products that were not capable of being legally sold or possessed and have no economic value and thus legally worthless. Plaintiff and the class lost money as a direct result of Defendant's unlawful conduct. Plaintiff alleges that he reviewed the labels on the respective Purchased Products that he purchased, reasonably relied in substantial part on the labels, and was thereby deceived, in deciding to purchase these products.

151. Defendant sold Misbranded Food Products, the Purchased Products and Substantially Similar Products in California and throughout the United States during the Class Period.

152. Defendant is a corporation and, therefore, is a "person" within the meaning of the Sherman Law.

153. Defendant's business practices are unlawful under § 17200, *et seq.* by virtue of Defendant's violations of the advertising provisions of Article 3 of the Sherman Law and the misbranded food provisions of Article 6 of the Sherman Law.

154. Defendant's business practices are unlawful under § 17200, *et seq.* by virtue of Defendant's violations of § 17500, *et seq.*, which forbids untrue and misleading advertising.

155. Defendant's business practices are unlawful under § 17200, *et seq.* by virtue of Defendant's violations of the Consumers Legal Remedies Act, Cal. Civ. Code § 1750, *et seq.*

156.   Defendant sold Plaintiff and the Class Misbranded Food Products that were not capable of being sold, or legally held and which were legally worthless.  Plaintiff and each Class paid a premium price for the Misbranded Food Products.

157.   As a result of Defendant's illegal business practices, Plaintiff and the members of each Class, pursuant to Business and Professions Code § 17203, are entitled to an order enjoining such future conduct and such other orders and judgments which may be necessary to disgorge Defendant's ill-gotten gains and to restore to any Class Member any money paid for the Misbranded Food Products.

158.   Defendant's unlawful business acts present a threat and reasonable continued likelihood of injury to Plaintiff and each Class member.

159.   As a result of Defendant's conduct, Plaintiff and the members of each Class, pursuant to Business and Professions Code § 17203, are entitled to an order enjoining such future conduct by Defendant, and such other orders and judgments which may be necessary to disgorge Defendant's ill-gotten gains and restore any money paid for Defendant's Misbranded Food Products by Plaintiff and the members of each Class.

## SECOND CAUSE OF ACTION
### (Business and Professions Code § 17200, *et seq.* Unfair Business Acts and Practices)

160.   Plaintiff incorporates by reference each allegation set forth above.

161.   Defendant's conduct as set forth herein constitutes unfair business acts and practices.

162.   Defendant sold Misbranded Food Products in California and throughout the United States during the Class Period.

163.   Plaintiff and the members of each Class suffered a substantial injury by virtue of buying Defendant's Misbranded Food Products that they would not have purchased absent Defendant's illegal conduct. Plaintiff alleges that he reviewed the labels on the respective Purchased Products that he purchased, reasonably relied in substantial part on the labels, and was thereby deceived, in deciding to purchase these products.

164.    Defendant's deceptive marketing, advertising, packaging and labeling of its Misbranded Food Products and its sale of unsalable misbranded products that were illegal to possess, were of no benefit to consumers, and the harm to consumers and competition is substantial.

165.    Defendant sold Plaintiff and the members of each Class Misbranded Food Products that were not capable of being legally sold or held and that were legally worthless. Plaintiff and the members of each Class paid a premium price for the Misbranded Food Products.

166.    Plaintiff and the members of each Class who purchased Defendant's Misbranded Food Products had no way of reasonably knowing that the products were misbranded and were not properly marketed, advertised, packaged and labeled, and thus could not have reasonably avoided the injury each of them suffered.

167.    The consequences of Defendant's conduct as set forth herein outweigh any justification, motive or reason therefor.  Defendant's conduct is, and continues to be, unlawful, unscrupulous, contrary to public policy, and is substantially injurious to Plaintiff and the members of each Class.

168.    As a result of Defendant's conduct, Plaintiff and the members of each Class, pursuant to Business and Professions Code § 17203, are entitled to an order enjoining such future conduct by Defendant, and such other orders and judgments which may be necessary to disgorge Defendant's ill-gotten gains and restore any money paid for Defendant's Misbranded Food Products by Plaintiff and the members of each Class.

**THIRD CAUSE OF ACTION**
**(Business and Professions Code § 17200, *et seq.***
**Fraudulent Business Acts and Practices)**

169.    Plaintiff incorporates by reference each allegation set forth above.

170.    Defendant's conduct as set forth herein constitutes fraudulent business practices under California Business and Professions Code sections § 17200, *et seq.*

171.    Defendant sold Misbranded Food Products in California and throughout the United

States during the Class Period.

172.    Defendant's misleading marketing, advertising, packaging and labeling of the Misbranded Food Products and misrepresentations and material omissions that the products were capable of sale, capable of possession and not misbranded were likely to deceive reasonable consumers, and in fact, Plaintiff and the members of each Class were deceived.  Plaintiff alleges that he reviewed the labels on the respective Purchased Products that he purchased, reasonably relied in substantial part on the labels, and was thereby deceived, in deciding to purchase these products. Defendant has engaged in fraudulent business acts and practices.

173.    Defendant's fraud and deception caused Plaintiff and the members of each Class to purchase Defendant's Misbranded Food Products that they would otherwise not have purchased had they known the true nature of those products.

174.    Defendant sold Plaintiff and the members of each Class Misbranded Food Products that were not capable of being sold or legally held and that were legally worthless. Plaintiff and the members of each Class paid a premium price for the Misbranded Food Products.

175.    As a result of Defendant's conduct as set forth herein, Plaintiff and each Class, pursuant to Business and Professions Code § 17203, are entitled to an order enjoining such future conduct by Defendant, and such other orders and judgments which may be necessary to disgorge Defendant's ill-gotten gains and restore any money paid for Defendant's Misbranded Food Products by Plaintiff and the members of each Class.

**FOURTH CAUSE OF ACTION**
**(Business and Professions Code § 17500, *et seq.***
**Misleading and Deceptive Advertising)**

176.    Plaintiff incorporates by reference each allegation set forth above.

177.    Plaintiff asserts this cause of action for violations of California Business and Professions Code § 17500*, et seq*. for misleading and deceptive advertising against Defendant.

178.    Defendant sold Misbranded Food Products in California and throughout the United States during the Class Period.

179.    Defendant engaged in a scheme of offering Defendant's Misbranded Food

Products for sale to Plaintiff and the members of each Class by way of, *inter alia*, product packaging and labeling, and other promotional materials.  These materials misrepresented and/or omitted the true contents and nature of Defendant's Misbranded Food Products.  Defendant's advertisements and inducements were made within California and throughout the United States and come within the definition of advertising as contained in Business and Professions Code §17500, *et seq.* in that such product packaging and labeling, and promotional materials were intended as inducements to purchase Defendant's Misbranded Food Products and are statements disseminated by Defendant to Plaintiff and the members of each Class that were intended to reach the members of each Class.  Defendant knew, or in the exercise of reasonable care should have known, that these statements were misleading and deceptive as set forth herein. Plaintiff alleges that he reviewed the labels on the respective Purchased Products that he purchased, reasonably relied in substantial part on the labels, and was thereby deceived, in deciding to purchase these products.

180.   In furtherance of its plan and scheme, Defendant prepared and distributed within California and nationwide via product packaging and labeling, and other promotional materials, statements that misleadingly and deceptively represented the composition and the nature of Defendant's Misbranded Food Products.  Plaintiff and the members of each Class necessarily and reasonably relied on Defendant's materials, and were the intended targets of such representations.

181.   Defendant's conduct in disseminating misleading and deceptive statements in California and nationwide to Plaintiff and the members of each Class was and is likely to deceive reasonable consumers by obfuscating the true composition and nature of Defendant's Misbranded Food Products in violation of the "misleading prong" of California Business and Professions Code § 17500, *et seq.*

182.   As a result of Defendant's violations of the "misleading prong" of California Business and Professions Code § 17500, *et seq.*, Defendant has been unjustly enriched at the expense of Plaintiff and the members of each Class.  Misbranded products cannot be legally sold or held and are legally worthless.  Plaintiff and the members of each Class paid a premium price for the Misbranded Food Products.

183.    Plaintiff and the members of each Class, pursuant to Business and Professions Code § 17535, are entitled to an order enjoining such future conduct by Defendant, and such other orders and judgments which may be necessary to disgorge Defendant's ill-gotten gains and restore any money paid for Defendant's Misbranded Food Products by Plaintiff and the members of each Class.

### FIFTH CAUSE OF ACTION
### (Business and Professions Code § 17500, *et seq.* Untrue Advertising)

184.    Plaintiff incorporates by reference each allegation set forth above.

185.    Plaintiff asserts this cause of action against Defendant for violations of California Business and Professions Code § 17500, *et seq.*, regarding untrue advertising.

186.    Defendant sold Misbranded Food Products in California and throughout the United States during the Class Period.

187.    Defendant engaged in a scheme of offering Defendant's Misbranded Food Products for sale to Plaintiff and the members of each Class by way of product packaging and labeling, and other promotional materials.  These materials misrepresented and/or omitted the true contents and nature of Defendant's Misbranded Food Products.  Defendant's advertisements and inducements were made in California and throughout the United States and come within the definition of advertising as contained in Business and Professions Code §17500, *et seq*. in that the product packaging and labeling, and promotional materials were intended as inducements to purchase Defendant's Misbranded Food Products, and are statements disseminated by Defendant to Plaintiff and the members of each Class.  Defendant knew, or in the exercise of reasonable care should have known, that these statements were untrue.

188.    In furtherance of its plan and scheme, Defendant prepared and distributed in California and nationwide via product packaging and labeling, and other promotional materials, statements that falsely advertise the composition of Defendant's Misbranded Food Products, and falsely misrepresented the nature of those products.  Plaintiff and the members of each Class were the intended targets of such representations and would reasonably be deceived by Defendant's

materials. Plaintiff alleges that he reviewed the labels on the respective Purchased Products that he purchased, reasonably relied in substantial part on the labels, and was thereby deceived, in deciding to purchase these products.

189.    Defendant's conduct in disseminating untrue advertising throughout California deceived Plaintiff and the members of each Class by obfuscating the contents, nature and quality of Defendant's Misbranded Food Products in violation of the "untrue prong" of California Business and Professions Code § 17500.

190.    As a result of Defendant's violations of the "untrue prong" of California Business and Professions Code § 17500, *et seq.*, Defendant has been unjustly enriched at the expense of Plaintiff and the members of each Class.  Misbranded products cannot be legally sold or held and are legally worthless.  Plaintiff and the members of each Class paid a premium price for the Misbranded Food Products.

191.    Plaintiff and the members of each Class, pursuant to Business and Professions Code § 17535, are entitled to an order enjoining such future conduct by Defendant, and such other orders and judgments which may be necessary to disgorge Defendant's ill-gotten gains and restore any money paid for Defendant's Misbranded Food Products by Plaintiff and the members of each Class.

### SIXTH CAUSE OF ACTION
### (Consumers Legal Remedies Act, Cal. Civ. Code §1750, *et seq.*)

192.    Plaintiff incorporates by reference each allegation set forth above.

193.    This cause of action is brought pursuant to the CLRA.

194.    On November 19, 2013, Plaintiff Figy provided Defendant with notice pursuant to Cal. Civ. Code § 1782.

195.    Consequently, Plaintiff and the members of each Class are entitled to actual and punitive damages against Defendant for its violations of the CLRA.  In addition, pursuant to Cal. Civ. Code § 1782(a)(2), Plaintiff and the members of each Class will be entitled to an order enjoining the above-described acts and practices, providing restitution to Plaintiff and the members of each Class, ordering payment of costs and attorneys' fees, and any other relief

1    deemed appropriate and proper by the Court pursuant to Cal. Civ. Code § 1780.

2         196.    Defendant's actions, representations and conduct have violated, and continue to

3    violate the CLRA, because they extend to transactions that are intended to result, or which have

4    resulted, in the sale of goods to consumers.

5         197.    Defendant sold Misbranded Food Products in California and throughout the United

6    States during the Class Period.

7         198.    Plaintiff and the members of each Class are "consumers" as that term is defined by

8    the CLRA in Cal. Civ. Code §1761(d).

9         199.    Defendant's Misbranded Food Products were and are "goods" within the meaning

10   of Cal. Civ. Code §1761(a).

11        200.    By engaging in the conduct set forth herein, Defendant has violated and continues

12   to violate Sections 1770(a)(5) of the CLRA, (because Defendant's conduct constitutes unfair

13   methods of competition and unfair or fraudulent acts or practices in that they misrepresent the

14   particular ingredients, characteristics, uses, benefits and quantities of the goods.

15        201.    By engaging in the conduct set forth herein, Defendant violated and continues to

16   violate Section 1770(a)(7) of the CLRA, because Defendant's conduct constitutes unfair methods

17   of competition and unfair or fraudulent acts or practices in that they misrepresent the particular

18   standard, quality or grade of the goods.

19        202.    By engaging in the conduct set forth herein, Defendant violated and continues to

20   violate Section 1770(a)(9) of the CLRA, because Defendant's conduct constitutes unfair methods

21   of competition and unfair or fraudulent acts or practices in that they advertise goods with the

22   intent not to sell the goods as advertised.

23        203.    By engaging in the conduct set forth herein, Defendant has violated and continues

24   to violate Section 1770(a)(16) of the CLRA, because Defendant's conduct constitutes unfair

25   methods of competition and unfair or fraudulent acts or practices in that they represent that a

26   subject of a transaction has been supplied in accordance with a previous representation when it

27   has not.

28        204.    Plaintiff alleges that he reviewed the labels on the respective Purchased Products

that he purchased, reasonably relied in substantial part on the labels, and was thereby deceived, in deciding to purchase these products.

205.    Plaintiff requests that the Court enjoin Defendant from continuing to employ the unlawful methods, acts and practices alleged herein pursuant to Cal. Civ. Code § 1780(a)(2).   If Defendant is not restrained from engaging in these practices in the future, Plaintiff and the members of each Class will continue to suffer harm.

## SEVENTH CAUSE OF ACTION
### (Breach Of Express Warranty)

206.    Plaintiff repeats and realleges each of the above allegations as if fully set forth herein.

207.    Defendant's affirmations of fact and/or promises relating to their Misbranded Food Products created express written warranties that the products would conform to Defendant's affirmations of fact and/or promises.

208.    Alternatively, Defendant's descriptions of their Misbranded Food Products became part of the bases of the bargains, creating express written warranties that the products purchased by Plaintiff and the other Class members would conform to Defendant's descriptions and specifications.

209.    In fact, the Misbranded Food Products purchased by Plaintiff did not so conform.

210.    Defendant provided written warranties that its Misbranded Food Products were labeled in compliance with state and federal law and were not misbranded under state and federal law. Defendant breached these express written warranties. The Plaintiff and the Class were Third party beneficiaries of the Defendant's warranties. Defendant breached these express written warranties.

211.    As a result of the foregoing, Plaintiff and the other Class members have suffered damages, in that the value of the products they purchased was less than warranted by Defendant.

212.    Plaintiff asserts this cause of action for violations of the laws of state and federal law pertaining to express warranties.

213.    Defendant engaged in a scheme of offering Misbranded Food Products for sale to

Plaintiff and members of the Class by way of, inter alia, product packaging and labeling, and other promotional materials.

214.    In furtherance of its plan and scheme, Defendant prepared and distributed within California and nationwide via product packaging and labeling, and other promotional materials, statements that misleadingly and deceptively represented the composition and nature of Misbranded Food Products.

215.    Plaintiff and the Class were the intended targets of such representations.

216.    Plaintiff and the Class reasonably relied on Defendant's representations.

217.    Plaintiff and the Class were injured as a result of Defendant's breach of their express warranties about Misbranded Food Products.

## EIGHTH CAUSE OF ACTION
### (Breach Of Implied Warranty Of Merchantability)

218.    Plaintiff repeats and realleges each of the above allegations as if fully set forth herein.

219.    Implied in the purchase of Misbranded Food Products by Plaintiff and the Class is the warranty that the purchased products are legal and can be lawfully resold.

220.    Defendant knowingly and intentionally misbranded its Misbranded Food Products.

221.    Defendant knew those Misbranded Food Products were illegal.

222.    When Defendant sold those products they impliedly warranted that the products were legal and could be lawfully resold.

223.    Plaintiff would not have knowingly purchased products that were illegal and unsellable.

224.    No reasonable consumer would knowingly purchase products that are illegal and unsellable.

225.    The purchased Misbranded Food Products were unfit for the ordinary purpose for which Plaintiff and the Class purchased them.

226.    In fact, these Misbranded Food Products were illegal, misbranded, and economically worthless.

227.    As a result, Plaintiff and the Class were injured through their purchase of an unsuitable, useless, illegal, and unsellable product.

228.    By reason of the foregoing, Plaintiff and the Class were damaged in the amount they paid for Misbranded Food Products.

## NINTH CAUSE OF ACTION
### (Negligent Misrepresentation)

229.    Plaintiff repeats and realleges each of the above allegations as if fully set forth herein.

230.    In making representations of fact to Plaintiff and the other Class members about their Misbranded Food Products, Defendant failed to fulfill their duties to disclose the material facts alleged above. Such failure to disclose on the part of Defendant amounts to negligent misrepresentation.

231.    Plaintiff and the other Class members, as a direct and proximate cause of Defendant's negligent misrepresentations, reasonably relied upon such misrepresentations to their detriment. By reason thereof, Plaintiff and the other Class members have suffered damages in an amount to be proved at trial.

## TENTH CAUSE OF ACTION
### (Negligence)

232.    Plaintiff repeats and realleges each of the above allegations as if fully set forth herein.

233.    In making representations of fact to Plaintiff and the other Class members about their Misbranded Food Products, Defendant failed to lawfully label or advertise their Misbranded Food Products and violated their duties to disclose the material facts alleged above. Such conduct on the part of Defendant amounts to negligence.

234.    Plaintiff and the other Class members, as a direct and proximate cause of Defendant's negligence, reasonably relied upon such representations to their detriment. By reason thereof, Plaintiff and the other Class members have suffered damages.

235.    As described above, Defendant's actions violated a number of express statutory provisions designed to protect Plaintiff and the Class. Defendant's illegal actions constitute

negligence per se. Moreover, the statutory food labeling and misbranding provisions violated by Defendant are strict liability provisions.

236.    As alleged above, Plaintiff and the Class were injured by Defendant's statutory violations and are entitled to recover an amount to be determined at trial due to the injuries and loss they suffered as a result of Defendant's negligence.

## ELEVENTH CAUSE OF ACTION
### (Unjust Enrichment)

237.    Plaintiff repeats and realleges each of the above allegations as if fully set forth herein.

238.    As a result of Defendant's unlawful and deceptive actions described above, Defendant were enriched at the expense of Plaintiff and the Class through the payment of the purchase price for Misbranded Food Products.

239.    Under the circumstances, it would be against equity and good conscience to permit Defendant to retain the ill-gotten benefits that they received from the Plaintiff and the Class, in light of the fact that the Misbranded Food Products purchased by Plaintiff and the Class was an illegal product and was not what Defendant represented it to be. Thus, it would be unjust and inequitable for Defendant to retain the benefit without restitution to the Plaintiff and the Class for the monies paid to Defendant for Misbranded Food Products.

## TWELFTH CAUSE OF ACTION
### (Common Count Of Money Had And Received -
### Recovery In Assumpsit of Funds Paid For Misbranded Products That Are Illegal To Sell)

240.     By definition, a contract is an agreement to do or not to do a certain thing. The sale and purchase of food items is a type of contract. The sale of misbranded food products is a type of illegal contract specifically prohibited by law.

241.    The sale of a misbranded food product is an illegal act in California and nationwide. Such a sale is expressly prohibited by California and federal law and the laws of other states.

242.    Pursuant to California Civ. Code § 3523 it is a codified legal maxim that "for every wrong there is a remedy." The unlawful sale of misbranded food products that are illegal to sell or possess as a matter of express statutory law pursuant to Sherman Law § 110760 – standing alone without any allegations of deception by Defendant other than the implicit misrepresentation that its products are legal to sell or possess, or any review of or reliance on the particular labeling claims by Plaintiff – gives rise to Plaintiff's right to recover for the damages suffered as a result of the illegal sale.

243.    The sale of a misbranded product violates the public policy of California and the other forty-nine states.

244.    The sale of a misbranded product in California constitutes an illegal contract and is void under the laws of California. Such illegal transactions are void under common law and the laws of the other states as well.

245.    Plaintiff and the Class seek damages and restitution under the common law and numerous statutory provisions enacted by California including but not limited to California Civ. Code §§ 1427, 1428, 1549, 1619, 1621, 1667, 1668, 1712, 3281-82, 3294, 3300, 3333, 3345, 3360, 3366-68, 3523, and 3539. These statutory provisions and the common law establish the right of the Plaintiff and the Class to 1) a remedy for Defendant's illegal acts, 2) various types of damages and restitution. Moreover, while the Plaintiff and the Class suffered significant injury and damage to be proved at trial, even if that were not the case, then pursuant to California Civ. Code § 3360, the  law would still allow Plaintiff and the Class to recover, *inter alia*, nominal damages due to the Defendant's illegal conduct.

246.    Plaintiff and members of the Class were unaware that the Misbranded Food Products purchased by Plaintiff and members of the Class were misbranded and thus illegal to sell or possess. Plaintiff and members of the Class thus lacked the factual information to indicate to Plaintiff and members of the Class that the sale of Misbranded Food Products in California or any other state constituted an illegal act.

247.    Plaintiff and members of the Class were justifiably ignorant of facts of which the Defendant was not ignorant.

248.    Plaintiff and members of the Class were not acquainted with the statutory regulations relating to the Defendant's food business and were justified in presuming special knowledge by the Defendant of such regulations.

249.    Plaintiff and the members of the Class were thus not *in pari delicto* with the Defendant who had superior knowledge of facts of which the Plaintiff and members of the Class were unaware. Plaintiff and the Class were justifiably ignorant of facts of which the Defendant was not ignorant, Plaintiff and the Class were not acquainted with the statutory regulations relating to the Defendant's particular business and Plaintiff and the Class were justified in presuming special knowledge by the Defendant of such regulations.

250.    Plaintiffs and the members of the Class are thus entitled to recover the funds they expended to purchase the Defendant's Misbranded Food Products.

251.    The Defendant received and has possession of money that it obtained from the illegal sale of misbranded food products to the Plaintiff and the Class in transactions that were unlawful, expressly prohibited by statute and void. The money held by Defendant is the property of Plaintiff and the Class.  Defendant is obliged in equity and good conscience to restore it to Plaintiff and the Class.

**FOURTEENTH CAUSE OF ACTION**
**(Declaratory Judgment That Defendant Violated Federal And State Laws Regarding**
**Mislabeled And Misbranded Food Products)**

252.    Plaintiff repeats and realleges each of the above allegations as if fully set forth herein.

253.    The sale of a misbranded food product is an illegal act in California and nationwide. Such a sale is expressly prohibited by Federal and California law as well as the laws of the other states.

254.    The sale of a misbranded product violates the public policy of California and the other 49 states.

255.    The sale of a misbranded product in California constitutes an illegal contract and is void under Federal law and the laws of California and the other states.

256.    Plaintiff and other members of the Class who purchased Defendant's Misbranded Food Products in California and nationwide further seek to enjoin such unlawful deceptive and unconscionable trade practices as described above. Each of the Class members who purchased Defendant's Misbranded Food Products in California and nationwide will be irreparably harmed unless the unlawful actions of the Defendant are enjoined in that Defendant will continue to falsely and misleadingly and unlawfully conceal the artificial flavors and chemical preservatives contained in its Misbranded Food Products and to illegally manufacture, distribute and sell this illegally labeled, misbranded product in violation of the food and drug laws that prohibit such actions. Plaintiff and other members of the Class who purchased Defendant's Misbranded Food Products in California and nationwide therefore seek to enjoin the manufacture, distribution or sale of any of Defendant's Misbranded Food Products in California and further request an order granting them injunctive relief ordering appropriate corrective advertising and appropriate disclosures on the labeling in advertising, marketing and promotion of Defendant's Misbranded Food Products in California and nationwide.

257.    A case or controversy exists among Plaintiffs, the Class and Defendant as to applicability of the federal and state laws as to Defendant.

258.     As a direct and proximate result of Defendant's conduct, Plaintiff and Plaintiff Class have suffered and will continue to suffer damages.

259.     Pursuant to 28 USCS § 2201, 28 USCS § 2202, F.R.C.P. 57, and California Code of Civ. Proc. § 1060, Plaintiff, on behalf of Plaintiff and the Class, requests a declaration of rights and duties with respect to Defendant, and an Order enjoining Defendant from continuing to market, advertise, distribute, and sell Misbranded Food Products in the unlawful manner described herein; and ordering Defendant to engage in corrective action.

260.     Absent such injunctive relief Defendant will continue to illegally manufacture, distribute and sell mislabeled and misbranded food products to the detriment of consumers in the state of California and nationwide.

## JURY DEMAND

Plaintiff hereby demands a trial by jury of their claims.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff, individually and on behalf of all others similarly situated, and on behalf of the general public, pray for judgment against Defendant as follows:

A.     For an order certifying this case as a national class action, and also a separate and distinct California class action and appointing Plaintiff and their counsel to represent each Class;

B.     For an order awarding all relief deemed appropriate and proper by the Court pursuant to Cal. Civ. Code § 1780;

C.     For an order requiring Defendant to immediately cease and desist from selling its Misbranded Food Products listed in violation of law; enjoining Defendant from continuing to market, advertise, distribute, and sell these products in the unlawful manner described herein; and ordering Defendant to engage in corrective action;

D.     For all equitable remedies available pursuant to Cal. Civ. Code § 1782;

E.     For an order awarding attorneys' fees and costs;

F.     For an order awarding punitive damages;

G.     For an order awarding pre-and post-judgment interest; and

1   H.  For an order providing such further relief as this Court deems proper.

2

3 Dated:  December 20, 2013.   Respectfully submitted,

4
         _/s/ D'Juana Parks_____s
5         D'Juana Parks (*pro hac vice*)
         PROVOST  ✭  UMPHREY LAW FIRM, LLP
6         490 Park St.
         Beaumont, TX 77701
7         Telephone: (409) 835-6000
         Fax: (409) 813-8647
8         dparks@pulf.com

9
         _/s/ Ben F. Pierce Gore_____
10        Ben. F. Pierce Gore (SBN 128515)
         PRATT & ASSOCIATES
11        1901 S. Bascom Avenue, Suite 350
         Campbell, CA  95008
12        Telephone:  (408) 429-6506
         Fax:  (408) 369-0752
13        pgore@prattattorneys.com

14

15         **CERTIFICATE OF SERVICE**

16   I hereby certify that I have on December 20, 2013, filed and served through the Court's ECF

17 system a true and correct copy of the foregoing.

18
         _/s/ D'Juana Parks_____
19        D'Juana Parks (*pro hac vice*)

20

21

22

23

24

25

26

27

28



**Exhibit 1**

# Nutrition Facts

Serving Size 1 cup (240mL)
Servings Per Container About 4

**Amount Per Serving**

**Calories** 140    Calories from Fat 20

| | % Daily Value* |
|---|---|
| **Total Fat** 2g | 4% |
| Sat Fat 1.5g | 8% |
| Trans Fat 0g | 0% |
| **Cholesterol** 10mg | 4% |
| **Sodium** 125mg | 5% |
| **Total Carbohydrate** 20g | 7% |
| Sugars 20g | |
| **Protein** 11g | |

Vitamin A 10% • Vitamin C 4%

Vitamin D 25% • Calcium 30% • Iron 0%

*Percent Daily Values (DV) are based on a 2,000 calorie diet.

**INGREDIENTS:** PASTEURIZED CULTURED ORGANIC LOWFAT MILK, ORGANIC NONFAT MILK, ORGANIC CANE JUICE, ORGANIC PEACH JUICE CONCENTRATE, ORGANIC ANATTO EXTRACT, VITAMIN A PALMITATE, VITAMIN D3. **CONTAINS MILK**

GRADE A



**Exhibit 2**

| | | |
|---|---|---|
| *Trans* Fat 0g | | 0% |
| **Cholesterol** 10mg | | 4% |
| **Sodium** 125mg | | 5% |
| **Total Carbohydrate** 20g | | 7% |
| Dietary Fiber 0g | | |
| Sugars 20g | | |
| **Protein** 11g | | |

Vitamin A 10% • Vitamin C 4%

Vitamin D 25% • Calcium 30% • Iron 0%

*Percent Daily Values (DV) are based on a 2,000 calorie diet.

**INGREDIENTS:** PASTEURIZED CULTURED ORGANIC LOWFAT MILK, ORGANIC NON FAT MILK, ORGANIC CANE JUICE, ORGANIC POMEGRANATE FLAVOR, ORGANIC ACAI FLAVOR, NATURAL FLAVORS, ORGANIC BEET POWDER (FOR COLOR), VITAMIN A PALMITATE, VITAMIN D3. **CONTAINS MILK**

**GRADE A**

**KEEP REFRIGERATED**

KOSHER
83

Certified
GF
Gluten-Free

0  17077 00532  6



**Exhibit 3**

| | | % Daily Value* |
|---|---|---|
| **Calories** 140 | Calories from Fat 20 | |
| **Total Fat** 2g | | 4% |
| Sat Fat 1.5g | | 8% |
| Trans Fat 0g | | 0% |
| **Cholesterol** 10mg | | 4% |
| **Sodium** 125mg | | 5% |
| **Total Carbohydrate** 20g | | 7% |
| Sugars 20g | | |
| **Protein** 11g | | |

Vitamin A 10% • Vitamin C 4%

Vitamin D 25% • Calcium 30% • Iron 0%

*Percent Daily Values (DV) are based on a 2,000 calorie diet.

**INGREDIENTS:** PASTEURIZED CULTURED ORGANIC LOWFAT MILK, ORGANIC NONFAT MILK, ORGANIC CANE JUICE, ORGANIC RASPBERRY JUICE CONCENTRATE, ORGANIC RED BEET JUICE (FOR COLOR), VITAMIN A PALMITATE, VITAMIN D3.

**CONTAINS MILK**

**GRADE A**

**KEEP REFRIGERATED**

**PLEASE RECYCLE**

0 17077 00332 2

© 2011, LIFEWAY FOODS INC., MORTON GROVE IL 60053
PLANT #17-111
CERTIFIED ORGANIC BY OREGON TILTH



**Exhibit 4**



| Nutrition Facts | |
|---|---|
| Serv. Size 1 cup (240mL) | Calories 140 |
| Serving About 1 | Fat calories 20 |

| Amount/Serving % DV* | |
|---|---|
| **Total Fat** 2g | 4% |
| Sat Fat 1.5g | 8% |
| Trans Fat 0g | 0% |
| **Cholesterol** 10mg | 4% |
| **Sodium** 125mg | 5% |
| **Total Carbohydrate** 20g | 7% |
| Sugars 20g | |
| **Protein** 11g | |

Vitamin A 10% • Vitamin C 4%
Calcium 30% • Iron 0% • Vitamin D3 25%
*Percent Daily Values (DV) are based on a 2,000 calorie diet.

INGREDIENTS: PASTEURIZED CULTURED LOWFAT MILK, NONFAT MILK, EVAPORATED CANE JUICE, STRAWBERRY JUICE CONCENTRATE, NATURAL FLAVORS, RED BEET JUICE FOR COLOR, VITAMIN A PALMITATE, VITAMIN D3. **CONTAINS MILK**

GRADE A
KEEP
REFRIGERATED

12. LIFEWAY FOODS INC.
TON GROVE IL 60053

Kefir is the
cousin of y
traced back



**Exhibit 5**

*Naturally Cultured*

The Farmers' Pledge: We only use milk free from rBST and rBGH and is GMO free.

# Nutrition Facts

Serving Size 1 cup (240mL)
Servings Per Container About 4

**Amount Per Serving**

**Calories** 150     Calories from Fat 0

| | % **Daily Value\*** |
|---|---|
| **Total Fat** 0g | **0%** |
| Sat Fat 0g | **0%** |
| *Trans* Fat 0g | **0%** |
| **Cholesterol** 5mg | **2%** |
| **Sodium** 125mg | **5%** |
| **Total Carbohydrate** 27g | **9%** |
| Sugars 27g | |
| **Protein** 11g | |

Vitamin A 10% • Vitamin C 4%

Vitamin D 25% • Calcium 30% • Iron 0%

\*Percent Daily Values (DV) are based on a 2,000 calorie diet.

**INGREDIENTS:** PASTEURIZED CULTURED NONFAT MILK, EVAPORATED CANE JUICE, RASPBERRY JUICE CONCENTRATE, NATURAL FLAVORS, RED BEET JUICE FOR COLOR, VITAMIN A PALMITATE, VITAMIN D3
**CONTAINS MILK**