Ben F. Pierce Gore (SBN 128515)
PRATT & ASSOCIATES
1901 S. Bascom Avenue, Suite 350
Campbell, CA 95008
Telephone: (408) 429-6506
Fax: (408) 369-0752
pgore@prattattorneys.com

D'Juana Parks *(pro hac vice)*
PROVOST ✯ UMPHREY LAW FIRM, LLP
490 Park Street
Beaumont, TX 77701
Telephone: (409) 835-6000
Fax: (409) 813-8647
dparks@pulf.com

*Attorneys for Plaintiffs*

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN FRANCISCO DIVISION

| | |
|---|---|
| ROBERT E. FIGY, individually and on behalf of himself and all others similarly situated,<br><br>Plaintiff,<br><br>v.<br><br>LIFEWAY FOODS, INC.,<br><br>Defendant. | Case No. 3:13-CV-04828-TEH<br><br>**PLAINTIFF'S SUPPLEMENTAL MEMORANDUM IN OPPOSITION TO DEFENDANT'S MOTION TO DISMISS FIRST AMENDED COMPLAINT**<br><br>Hearing Date: April 14, 2014,<br>Time: 10:00 a.m.<br>Courtroom: 2<br>Judge: Hon. Thelton E Henderson<br>Action Filed: October 17, 2013 |

.

**TABLE OF CONTENTS**

TABLE OF AUTHORITIES .................................................................................................................. ii

I.   The use of ECJ on food labels violates FDA's longstanding interpretation. ....................... 1

II.  Reopening the comment period does not signal a reversal in FDA's
     position such that the primary jurisdiction doctrine might apply. ...................................... 3

III. Regardless of any future FDA action, Defendant will continue to be bound
     by the sugar regulations ........................................................................................................ 5

IV.  The primary jurisdiction doctrine is additionally inapplicable because there
     is no available administrative remedy. ................................................................................. 6

**TABLE OF AUTHORITIES**

**Cases**

*Cannon v. Wells Fargo Bank N.A.*,
    917 F. Supp. 2d 1025 (N.D. Cal. 2013)......................................................................... 6

*Gitson v. Trader Joe's Co.*,
    No. 13-cv-01333-WHO, 2013 U.S. Dist. LEXIS 144917 (N.D. Cal. Oct. 4,
    2013). ....................................................................................................................... 4, 5

*Hood v. Wholesoy & Co.*,
    No. 12-CV-05550-YGR, 2013 U.S. Dist. LEXIS 97836 (N.D. Cal. July 12,
    2013). ....................................................................................................................... 3, 4

*Ivie v. Kraft Foods Global, Inc. (Ivie I)*,
    No. C-12-02554-RMW, 2013 U.S. Dist. LEXIS 25615 (N.D. Cal. Feb. 25,
    2013). ............................................................................................................................. 4

*Ivie v. Kraft Foods Global, Inc.*,
    961 F. Supp. 2d 1033 (N.D. Cal. 2013)......................................................................... 4

*Kane v. Chobani, Inc.*, No.: 12-CV-02425-LHK, 2013 U.S. Dist. LEXIS 98752 (N.D.
    Cal. July 12, 2013). ....................................................................................................... 4

*Leonhart v. Nature's Path Foods, Inc.*,
    No. 5:13-CV-0492-EJD (N.D. Cal. Mar. 31, 2014). ..................................................... 5

*Lockwood v. Conagra Foods, Inc.*,
    597 F. Supp. 2d 1028 (N.D. Cal. 2009)......................................................................... 6

*Morgan v. Wallaby Yogurt Co.*,
    No. 13-cv-00296-WHO, 2013 U.S. Dist. LEXIS 144959 (N.D. Cal. Oct. 4,
    2013). ....................................................................................................................... 4, 5

*Pratt v. Whole Foods Market California, Inc.*,
    No. 5:12-cv-05652-EJD (N.D. Cal. Mar. 31, 2014). ..................................................... 5

*Reese v. Odwalla, Inc.*,
    No.: 13-CV-947 YGR, 2014 U.S. Dist. LEXIS 40341 (N.D. Cal. Mar. 25,
    2014). ............................................................................................................................. 4

*Rosado v. Wyman*,
    397 U.S. 397 (1970);..................................................................................................... 6

*Ross v. Clover Stornetta Farms*,
    No. C -13-01517 EDL, 2014 U.S. Dist. LEXIS 5408 (N.D. Cal. Jan. 14, 2014)........... 4

*Samet v. Proctor & Gamble Co. (Samet II)*,
    No. 5:12-cv-01891-PSG, 2013 U.S. Dist. LEXIS 173522 (N.D. Cal. Dec. 10,
    2013). ............................................................................................................................. 4

*Swearingen v. Amazon Preservation Partners, Inc.*,
    No. 13-cv-04402-WHO, 2014 U.S. Dist. LEXIS 36830 (N.D. Cal. Mar. 18,
    2014). ....................................................................................................................... 4, 5

*Swearingen v. Yucatan Foods, L.P.*,
    No.: 5:12-CV-01891 PSG, 2014 U.S. Dist. LEXIS 18094 (N.D. Cal. Feb. 7,
    2014). ........................................................................................................................... 4

*Trazo v. Nestlé USA, Inc.*,
    No.: 5:12-CV-2272 PSG, 2013 U.S. Dist. LEXIS 113534 (N.D. Cal. Aug. 9,
    2013). ........................................................................................................................... 4

*U.S. v. Gonzalez-Alvarez*,
    277 F.3d 73 (1st Cir. 2002). ....................................................................................... 6

*Werdebaugh v. Blue Diamond Growers*,
    No.: 12-CV-02724-LHK, 2013 U.S. Dist. LEXIS 144178 (N.D. Cal. Oct. 2,
    2013). ........................................................................................................................... 4

**Regulations**

21 C.F.R. § 10.115. .................................................................................................................. 5, 6

21 C.F.R. § 10.40..................................................................................................................... 5

21 C.F.R. § 101.4.............................................................................................................. 2, 5, 6

21 C.F.R. § 102.5...................................................................................................................2, 6

21 C.F.R. § 120.1................................................................................................................... 1

21 C.F.R. § 168.130. ...........................................................................................................1, 2

21 C.F.R. § 184.1854. ......................................................................................................2, 5, 6

**I.     The use of ECJ on food labels violates FDA's longstanding interpretation.**

As set out in the First Amended Complaint ("FAC") and Plaintiff's response to Defendant's motion to dismiss, the Food and Drug Administration ("FDA") has a longstanding and consistently held position that the use of the term "evaporated cane juice" ("ECJ") on food ingredient lists is illegal because it is misleading and violates the "common or usual name" requirement. *See* FAC ¶¶ 38-59, 63, 98-104. This policy was set out in FDA's 2000 Guidance Letter, and was repeated in numerous warning letters, and restated in FDA's Guidance for Industry: Ingredients Declared as Evaporated Cane Juice; Draft Guidance (" Draft Guidance") *See Id.*; Exh. A-F, H.[1]

When the notice of the Draft Guidance was published in the Federal Register, despite the boilerplate disclaimers about the nonbinding nature of the draft guidance, FDA stated: "The intent of this draft guidance is to advise the regulated industry of FDA's view that the term 'evaporated cane juice' is not the common or usual name of any type of sweetener, including dried cane syrup." Exh. H. FDA further explained: "This guidance is being issued because the term 'evaporated cane juice' has appeared on a number of food labels in recent years. FDA's current policy is that sweeteners derived from sugar cane syrup should not be declared as 'evaporated cane juice' because that term falsely suggests that the sweeteners are juice as defined in 21 CFR 120.1(a)." *Id.*

On March 3, 2014, FDA introduced a series of the most significant proposed changes to food labeling laws in over twenty years. *See* Exh. I. One of the focuses of this campaign is the disclosure of added sugar in foods. *See id.*, 79 Fed. Reg. at 11902-08. As part of this campaign, FDA has issued a notice ("Notice") of the reopening of the comment period on dormant 2009 Guidance on ingredients that food manufacturers have identified as ECJ. *See* Exh. J. Nothing in the Notice indicates that FDA is going to change its position on the illegality of the use of the term ECJ. At most, it indicates that FDA might reconsider its suggestion in the 2009 Guidance that "dried cane syrup" might be an appropriate name for the ingredient.[2] *See* Exh. J, 79 Fed. Reg. at 12508 (noting

---

[1] References to exhibits herein refer to the exhibits to Plaintiff's contemporaneously-filed Request for Judicial Notice.

[2] "Cane syrup" is the lone name that includes the word "syrup," as opposed to "sugar." However, cane syrup has an FDA standard of identity (21 C.F.R. § 168.130) that is separate from FDA's definition of sucrose. Therefore, it need not include the operative word "sugar." *See* 21 C.F.R. § 168.130(c) and (d) (requiring ingredients that fall within this standard of identity be called "cane

diversity of views on "dried cane syrup"). Questions about why the use of the word "juice" might be appropriate when the ingredient is not "juice" under the regulations, or what differentiates ECJ from other sweeteners derived from sugar cane that include "sugar" or "syrup" in their names indicates that FDA will continue to view the use of the term ECJ as illegal, especially in view of the fact that the ingredient that Defendant calls ECJ at issue in this case is a 99% sucrose product that is not significantly different from ingredients labeled as "sugar," and that in fact ECJ as used by the Defendant in this case describes an ingredient that is properly labeled as "sugar" under existing regulations.[3] *See id.*; FAC ¶¶ 23, 47, 57-58, 108-109, 111-112, 133. Based on what FDA has said in the

---

syrup" or "sugar cane syrup"). There is no other standard of identity for "evaporated cane juice" that permits such a term without the word "sugar." However, as alleged in the FAC, the ingredient Defendant labels as ECJ is in fact "sucrose" as defined by the regulations, and is little different from refined white sugar. *See* FAC ¶¶ 47, 108, 111, 112.

By definition, "cane sirup" (or "cane syrup") is "the liquid food derived by concentration and heat treatment of the juice of sugarcane (*Saccharum officinarum* L.) or by solution in water of sugarcane concrete made from such juice." 21 C.F.R. § 168.130(a). During the initial comment period on the Draft Guidance, various industry commentators asserted that "dried cane syrup" was not an appropriate name for ECJ because "cane sirup" is by definition a liquid, whereas the ingredient labeled as ECJ is not a liquid, and that ECJ does not go through a syrup phase. This may explain FDA's request for information on how the ingredient is made. However, if these comments are well taken and "dried cane syrup" is not an appropriate name for the ingredient, that would leave only "sugar," or some variation thereof, as a permissible alternative. It would not change FDA's determination that ECJ is misleading and violated the common or usual name requirement. If 21 C.F.R. § 168.130 is inapplicable, it would simply mean that this ingredient must be called "sugar."

[3] FDA believes that use of the term "evaporated cane juice" does not "square with the principle that common or usual names should be uniform and consistent among similar foods." *See* Exh. J; 79 Fed. Reg. 12508. The Notice refers to clear "FDA regulations [that] provide general principles for common or usual names to be used in the labeling of foods. The name must describe the basic nature of the food or its characterizing properties or ingredients. Moreover, the name must be uniform among all identical or similar products and may not be confusingly similar to the name of any other food that is not encompassed within the same name." *Id* (citing 21 C.F.R. § 102.5(a)).

Further, 21 C.F.R. § 102.5(d) states that "[a] common or usual name of a food may be established by common usage or by establishment of a regulation in subpart B of this part, in part 104 of this chapter, in a standard of identity, or in other regulations in this chapter." Such regulations require that the ingredient Defendant calls "evaporated cane juice" be referred to as "sugar" on food labels. "For purposes of ingredient labeling, the term sugar shall refer to sucrose, which is obtained from sugar cane or sugar beets in accordance with the provisions of § 184.1854 of this chapter." 21 C.F.R. § 101.4(b)(20). The regulations define "sucrose" as:

> Sucrose… sugar, cane sugar, or beet sugar is the chemical beta-D-fructofuranosyl-alpha-D-glucopyranoside. Sucrose is obtained by crystallization from *sugar cane or sugar beet juice* that has been extracted by pressing or diffusion, then clarified and *evaporated*.

21 C.F.R. § 184.1854 (emphasis added, chemical formula omitted).

If an ingredient falls within this definition of "sucrose," it must be called "sugar." FDA, however, does permit certain sweeteners derived from sugar cane to be referred to by slightly different names.

past and what it said in the Notice, the only way FDA *might* find the use of the term ECJ legal is if it described a product much different from the one at issue in this suit.

The Draft Guidance never implied that FDA ever had, or ever would, permit the use of the term of "evaporated cane juice." It did the exact opposite. *See* Exh. A, I. Likewise, that Notice does not indicate that FDA has changed its position on the legality of the use of the term ECJ on food labels, nor does it indicate that FDA is likely to change its position in the future. The Notice again restates FDA's consistent and unwavering "view that the term 'evaporated cane juice' is not the common or usual name of any type of sweetener, including sweeteners derived from cane syrup." *See* Exh. J; 79 Fed. Reg. 12507. The Notice makes clear that this was FDA's position at the time the Draft Guidance was issued, and remains FDA's position today. *Id.*

## II.  Reopening the comment period does not signal a reversal in FDA's position such that the primary jurisdiction doctrine might apply.

Numerous courts in this district have considered whether the Draft Guidance provided a basis to stay or dismiss based on the primary jurisdiction doctrine, and have ruled with near unanimity that it does not.[4] The exception is Judge Gonzalez Rogers' who stayed or dismissed ECJ claims in *Hood v.*

---

As discussed in the Notice, these sweeteners include "raw sugar, cane sugar, cane syrup, demerara sugar, muscovado sugar, turbinado sugar, etc." *See* Exh. J; 79 Fed. Reg. 12508. The Notice points out the obvious -- that each of these names includes the critical words "sugar" or "syrup." *Id.* Consumers are not deceived as to the presence of added sugar in products where the ingredient is identified with the words "sugar" or "syrup." They are deceived by the term "evaporated cane juice." *See* FAC ¶¶ 70-114.

   Taking into account clear requirements of FDA regulations, the Notice posits the following point of logic that Defendant is unable to overcome:

   Considering that the ingredient sometimes declared as "evaporated cane juice" is also a sweetener derived from sugar cane, what would be the rationale for establishing a common or usual name that identifies this ingredient as a "juice" rather than as a "sugar" or "syrup," and how would such an approach square with the principle that common or usual names should be uniform and consistent among similar foods?

Exh. J; 79 Fed. Reg. 12508. If the relevant provisions of the Food, Drug and Cosmetic Act and FDA regulations are followed, evaporated cane juice, too, must be identified with the word "sugar."

   [4] Defendant asserts that these decisions "were largely predicated upon conclusions that FDA's October 2009 Draft Guidance constituted a conclusive articulation of FDA's position as to the listing of ECJ as an ingredient," and suggests that these decisions were incorrect because the Draft Guidance "did not establish legally enforceable obligations." *See* Doc. 37, Def. Supp. Mem. at 5. In fact, as touched upon in footnote 5, *infra*, those courts addressed essentially the same arguments Defendant makes here, and gave appropriate weight to the boilerplate disclaimers and arguments by defendants that the 2009 Guidance was not binding or a final ruling.

*Wholesoy & Co.*, No. 12-CV-05550-YGR, 2013 U.S. Dist. LEXIS 97836 (N.D. Cal. July 12, 2013), and *Reese v. Odwalla, Inc.*, No.: 13-CV-947 YGR, 2014 U.S. Dist. LEXIS 40341 (N.D. Cal. Mar. 25, 2014). In *Hood*, Judge Gonzalez Rogers overlooked or failed to consider FDA's longstanding and consistent position that the use of ECJ on food ingredient lists violates existing regulations, and dismissed ECJ claims based on an incorrect assumption that the 2009 Guidance as though it were an announcement that FDA was proposing to decide the issue for the first time. As set out in Plaintiff's previous briefing, every other court to consider the matter has declined to follow *Hood*.[5] In *Reese*, Judge Gonzalez Rogers took the reopening of the comment period as an indication that FDA's position on the unlawfulness of ECJ on food ingredient labels was "not settled." *Reese*, 2014 U.S. Dist. LEXIS 40341 at *16. In fact, nothing in the notice of the reopening of the comment period suggests that FDA is going to change its position on the illegality of the use of the term ECJ.

In contrast to Judge Gonzalez Rogers' decision in *Reese* is Judge Orrick's order on a motion to dismiss in *Swearingen v. Amazon Preservation Partners, Inc.,* No. 13-cv-04402-WHO, 2014 U.S. Dist. LEXIS 36830 (N.D. Cal. Mar. 18, 2014). In this case, Judge Orrick summarily denied a motion to

---

[5] Cases expressly declining to follow *Hood* include *Swearingen v. Yucatan Foods, L.P.*, No.: 5:12-CV-01891 PSG, 2014 U.S. Dist. LEXIS 18094 at *15-18 (N.D. Cal. Feb. 7, 2014) (observing that the issue "is hardly one of 'first impression' necessitating its commitment to the agency."); *Ross v. Clover Stornetta Farms*, No. C -13-01517 EDL, 2014 U.S. Dist. LEXIS 5408 at *30-42 (N.D. Cal. Jan. 14, 2014) (declining to follow *Hood*); *Gitson v. Trader Joe's Co.*, No. 13-cv-01333-WHO, 2013 U.S. Dist. LEXIS 144917 at *27-29 (N.D. Cal. Oct. 4, 2013); *Morgan v. Wallaby Yogurt Co.*, No. 13-cv-00296-WHO, 2013 U.S. Dist. LEXIS 144959 at *12-15 & n. 3 (N.D. Cal. Oct. 4, 2013); and *Werdebaugh v. Blue Diamond Growers*, No.: 12-CV-02724-LHK, 2013 U.S. Dist. LEXIS 144178 at *36-41 & n. 4 (N.D. Cal. Oct. 2, 2013). In addition, there are a number of decisions predating *Hood* or that did not mention *Hood* in which courts in the Northern District refused to stay or dismiss ECJ claims on primary jurisdiction grounds, despite claims by defendants that the 2009 Guidance was not binding or a final ruling, including, *Samet v. Proctor &Gamble Co.*, No. 5:12-cv-01891-PSG, 2013 U.S. Dist. LEXIS 173522 at *22 n.6 (N.D. Cal. Dec. 10, 2013) ("*Samet II*"); *Kane v. Chobani, Inc.*, No.: 12-CV-02425-LHK, 2013 U.S. Dist. LEXIS 98752 at *59-61 (N.D. Cal. July 12, 2013), *vacated by*, 2013 U.S. Dist. LEXIS 147143 (N.D. Cal. July 25, 2013), *reconsidered on other grounds*, 2013 U.S. Dist. LEXIS 134385 (N.D. Cal. Sept. 19, 2013); *Samet v. Proctor &Gamble Co.*, No. 5:12-cv-01891-PSG, 2013 U.S. Dist. LEXIS 86432 at *26-29 (N.D. Cal. June 18, 2013) ("*Samet I*"); and *Ivie v. Kraft Foods Global, Inc.*, No. C-12-02554-RMW, 2013 U.S. Dist. LEXIS 25615 *14-18, 34-36 (N.D. Cal. Feb. 25, 2013) ("*Ivie I*"). Finally, courts have declined to stay or dismiss under the primary jurisdiction doctrine in cases involving ECJ claims without specifically discussing the 2009 Guidance in cases like *Trazo v. Nestlé USA, Inc.*, No.: 5:12-CV-2272 PSG, 2013 U.S. Dist. LEXIS 113534 at *21-22 n.55 (N.D. Cal. Aug. 9, 2013) (observing that "the court need not yield to the FDA under the doctrine of primary jurisdiction. The FDA does not enforce the California state rights Plaintiffs seek to vindicate."); and *Ivie v. Kraft Foods Global, Inc.*, 961 F. Supp. 2d 1033, 1045 (N.D. Cal. 2013) ("*Ivie II*") (FDA's expertise not needed to determine whether labels violated existing regulations).

stay under the primary jurisdiction doctrine as contrary to his decisions in *Morgan v. Wallaby Yogurt Co., Inc.*, 2013 U.S. Dist. LEXIS 144959 at *12-14, and) *Gitson v. Trader Joe's Co.*, 2013 U.S. Dist. LEXIS 144917 at *27-29. Regarding the Notice that FDA was reopening the comment period on the Draft Guidance, Judge Orrick noted that the Notice said "'we [the FDA] intend to revise the draft guidance, *if appropriate*'" and ruled that absent some definitive change in FDA's position, the case would "proceed apace." *Swearingen v. Amazon Preservation Partners, Inc.,* 2014 U.S. Dist. LEXIS 36830 at *11 n.3 (quoting Notice). Judge Orrick is correct. The Notice does not indicate a departure from FDA's current and longstanding position, and it does not indicate that FDA is going to change its position on the illegality of ECJ on food label ingredient lists.[6]

### III. Regardless of any future FDA action, Defendant will continue to be bound by the sugar regulations

The Notice make it clear that FDA's position on the term "evaporated cane juice" has not changed and that even after any final deliberations, food manufacturers will continue to be bound by unambiguous statutes and regulations that require that ingredients falling within the broad definition of "sucrose" be called "sugar."[7] At most, after deliberations, FDA will issue guidance in final form in accordance with 21 C.F.R. § 10.115. *See* Exh. J. FDA will *not* be issuing any new rule or regulation. To do so, it would have to issue a proposed rule or regulation and follow the requirements set forth in 21 C.F.R. § 10.40. FDA has chosen to forgo any rule making and is merely issuing guidance.[8]

---

[6] About two weeks after judge Orrick released his opinion in *Swearingen v. Amazon Preservation Partners*, Judge Davila released two opinions in which, although not expressly addressing the reopening of the comment period, he declined to follow Judge Gonzalez Rogers reasoning in *Hood* and "adopts the position taken by a majority of courts in this district, finding that ECJ claims need not be dismissed as a result of the primary jurisdiction doctrine." *See Leonhart v. Nature's Path Foods, Inc.*, No. 5:13-CV-0492-EJD at 12 (N.D. Cal. Mar. 31, 2014); *Pratt v. Whole Foods Market California, Inc.*, No. 5:12-cv-05652-EJD at 13 (N.D. Cal. Mar. 31, 2014).

[7] Defendant says the Court should wait until FDA issues its final guidance to avoid the possibility of the Court's decision forcing it to violate labeling guidance or requirements imposed by FDA. But granting the relief sought in the FAC would only entail a finding that the use of ECJ is illegal. It would not require the Court to decide what Defendant should use in its place. Moreover, regardless of what FDA might say in a finalized guidance, it is beyond reasonable dispute that Defendant could comply with existing regulations by listing the ingredient that it calls ECJ as "sugar." *See* 21 C.F.R. § 101.4(b)(20) (allowing the generic term "sugar" on food ingredient lists for any form of "sucrose" obtained in accordance with 21 C.F.R. § 184.1854, which, as alleged FAC ¶47 and elsewhere, includes the ingredient Defendant lists as ECJ); *see also* discussion at footnote 3, *supra*.

[8] In contrast, FDA has issued a proposed new *rule* relating to the disclosure of the amount of added sugar in a product. *See* Exh. I; 79 Fed. Reg. 11879, *et seq.*

PLAINTIFF'S SUPPLEMENTAL MEMORANDUM IN OPPOSITION TO MOTION TO DISMISS FIRST AMENDED COMPLAINT    5
3:13-CV-04828-TEH

In its reply on its motion to dismiss, Defendant argued to the court that "formal, final Guidance Documents have no legal authority." Doc. 30 at 11. Given that representation to the Court, it is more than a little inconsistent for Defendant to represent in its supplemental brief that the Court should stay or dismiss pending FDA's issuance of a final guidance document. If, as Defendant represented to the Court, it would have no legal authority, what possible reason could there be to wait for FDA to issue the guidance? Furthermore, regardless of any guidance document, Defendant has to abide by the applicable regulations. *See* 21 C.F.R. § 10.115(d)(2) ("You may choose to use an approach other than the one set forth in a guidance document. However, your alternative approach *must comply with the relevant statutes and regulations*." (emphasis added)); 21 C.F.R. § 10.115(d)(1) (guidance documents do not establish legally enforceable rights and do not bind the public or FDA). So regardless of the contents of the Draft Guidance, the Notice, or any future guidance, Defendant has always been, is, and will be, bound by 21 C.F.R. §§ 101.4(a)(1); 101.4(b)(20); 102.5 and 184.1854.[9] *See* FAC ¶¶ 23, 47-49, 98-100, 102 footnote 3, *supra*.

### IV. The primary jurisdiction doctrine is additionally inapplicable because there is no available administrative remedy.

The primary jurisdiction doctrine is also inapplicable because the Notice does not create an administrative remedy for the redress of Plaintiff's injury. While Plaintiff may comment on the Draft Guidance, FDA cannot award damages. Absent an available administrative remedy, the doctrine is inapplicable. *Rosado v. Wyman*, 397 U.S. 397, 406 (1970). a*ccord*, *Rhoades v. Avon Prod., Inc.*, 504 F.3d 1151, 1164 n.12 (9th Cir. 2007); *California v. Kinder Morgan Energy, L.P.*, 569 F. Supp. 2d 1073, 1083 (S.D. Cal. 2008); *Cannon v. Wells Fargo Bank N.A.*, 917 F. Supp. 2d 1025, 1040 (N.D. Cal. 2013).[10]

---

[9] In the unlikely event that FDA reverses itself and permits use of the term ECJ, Plaintiff's claims will remain unaffected. All relevant purchases and injuries of class members occurred at a time when use of the term was illegal. Purchased products were misbranded, illegal and, at the relevant time, worthless as a matter of law. *See U.S. v. Gonzalez-Alvarez*, 277 F.3d 73, 78 (1st Cir. 2002).

[10] Defendant is also alleged to have violated Sherman Law provisions that do not expressly adopt federal requirements, but set state requirements that are consistent with federal requirements. *See* FAC. ¶¶ 4, 8-9, 35, 37, 115-123. These state laws are consistent with both the language of *current* federal law and FDA's *current* interpretation of that law. To the extent FDA might alter that interpretation in the future, neither it, nor federal courts, can preclude California and its citizens from enforcing California laws as they are *currently* worded and interpreted. *See Lockwood v. Conagra Foods, Inc.*, 597 F. Supp. 2d 1028, 1035 (N.D. Cal. 2009) ("even if the FDA were to formally define 'natural,' federal law would not dispose of plaintiffs' state law claims").

Dated: April 3, 2014

Respectfully submitted,

　　　/s/ D'Juana Parks　　　
D'Juana Parks (*pro hac vice*)
PROVOST ✯ UMPHREY LAW FIRM, LLP
490 Park St.
Beaumont, TX 77701
Telephone: (409) 835-6000
Fax: (409) 813-8647
dparks@pulf.com

Ben F. Pierce Gore (SBN 128515)
PRATT & ASSOCIATES
1901 S. Bascom Avenue, Suite 350
Campbell, CA 95008
Telephone: (408) 429-6506
Fax: (408) 369-0752
pgore@prattattorneys.com

**CERTIFICATE OF SERVICE**

I hereby certify that I have on April 3, 2014, filed and served through the Court's ECF system a true and correct copy of the foregoing.

　　　/s/ D'Juana Parks　　　
D'Juana Parks (*pro hac vice*)